Wanda F. CHAMBERLAIN,
Plaintiff-Appellant,

v.

WICHITA FALLS INDEPENDENT
SCHOOL DISTRICT et al.,
Defendants-Appellees.

No. 76–1965
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Sept. 27, 1976.

* Rule 18, 5 Cir.;  see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.,* 5 Cir., 1970, 431 F.2d 409, Part I.

Milton E. Douglass, Jr., Wichita Falls, Tex., for plaintiff-appellant.

Roger A. Lee, Wichita Falls, Tex., H. Dustin Fillmore, Fort Worth, Tex., for defendants-appellees.

John L. Hill, Atty. Gen., Austin, Tex., Joe T. Hickey, Asst. Atty. Gen., David M. Kendall, Elizabeth Levatino, Austin, Tex., for amicus curiae.

Before BROWN, Chief Judge, and GEWIN and MORGAN, Circuit Judges.

GEWIN, Circuit Judge:

This is an action under 42 U.S.C. § 1983 by a "continuing contract" teacher[1] challenging the termination of her employment. The district court rendered judgment for the school district, the school board and the superintendent. We affirm.

Wanda F. Chamberlain was employed under a continuing contract by the Wichita Falls Independent School District as an elementary mathematics teacher. During the 1974–75 school year it became apparent that her performance in the classroom was unsatisfactory. In January, 1975 she was informed that her teaching would have to improve, or she would be terminated. In April of that year, defendant Williamson, Superintendent of the School District, told her that he was recommending to the School District Board of Trustees that her employment be terminated. The formal notice of this decision was contained in a letter to the board[2] dated May 14, 1976. Dr. Williamson's letter listed the following grounds for her termination:

"(1) Inefficiency or incompetence in performance of duties, . . .

(2) Failure to comply with such reasonable requirements as the board of trustees may prescribe for achieving professional improvement and growth; . . . " —V.T.C.A. Education Code, Sec. 13.110

At Chamberlain's request, a formal hearing[3] was held on June 18, 1975. At this hearing she was represented by counsel, was allowed to cross-examine all witnesses, and was afforded the opportunity to call witnesses in her behalf, but she chose not to do so. She was not, however, permitted to conduct a voir dire examination of the board members to discover evidence of possible bias or prejudice. Following the hearing, the trustees elected to terminate her employment. She subsequently filed this action in the district court requesting injunctive and declaratory relief and damages.[4]

The district court, sitting without a jury, entered judgment for the defendants and dismissed Chamberlain's action on the basis of the pleadings, testimony, stipulations and arguments of counsel. At the hearing before the school board eleven witnesses including teachers, administrators, parents and students gave testimony concerning Chamberlain's lack of competency and her inability to maintain discipline in the classroom. The trial judge found that the second ground for dismissal listed above was not supported by the record. However, he found no such lack of support for the first ground and ruled that the proceedings did not deny appellant rights guaranteed by the due process and equal protection clauses of the fourteenth amendment.

Chamberlain timely filed notice of appeal from the district court's order and presents three issues for this court's consideration. Besides the school board's refusal to permit a voir dire examination of its members, she attacks two provisions of the Texas Education Code. First, she contends that Superintendent Williamson's decision to recommend termination of her employment rather than return her to probationary status pursuant to section 13.110 of the Education Code and her subsequent discharge by the board violate due process. Second, the difference between the termination notice authorized to be given probationary teachers

---

1. A continuing contract, with its attendant procedural requirements and limitations on termination, is available to teachers who have completed at least three years of consecutive service. Tex.Educ.Code Ann. §§ 13.106 et seq. (1972). Prior to employment under a continuing contract, teachers are employed under a probationary contract, which is terminable "at the end of the contract period, if in [the board of trustees'] judgment the best interest of the school district will be served thereby . . . ." Id. at § 13.103.

2. A copy of the letter was also mailed to appellant.

3. It was the school district's practice to conduct such hearings in private. In this case, however, the hearing was open to the public at appellant's request.

4. Appellant's motion to convene a three-judge district court under 28 U.S.C. §§ 2281, 2284 (1970) was denied.

and that to be given continuing contract teachers as provided by the Code is questioned on equal protection grounds.

Section 13.110 of the Texas Education Code reads as follows:

*Any teacher employed under a continuing contract may be* released at the end of any school year and his employment with the school district *terminated* at that time, *or he may be returned to probationary contract employment* for not exceeding the three succeeding school years, upon notice and hearing (if requested) as hereinafter provided, for any reason enumerated in Section 13.109 of this code or for any of the following additional reasons:

(1) inefficiency or incompetence in performance of duties;

(2) failure to comply with such reasonable requirements as the board of trustees of the employing school district may prescribe for achieving professional improvement and growth;

[Subsections (3)–(7) omitted. (emphasis added)]

Appellant contends that the choice of remedies as provided in the above quoted section constitutes a denial of due process in that "it delegates without [any] guidelines or standards whatsoever the exercise of legislative discretion in election of remedies between discharge and return to probationary status." Brief for Appellant at p. 10.

While the parties stipulated that there were no prescribed guidelines, directives; or policies promulgated by the statute or the school district concerning this election, the superintendent of schools testified that his recommendation was based on, "Whether or not there is a chance for [the teacher] to succeed." Brief for Appellant at 12. In essence, the issue is whether the school district can be vested with power to "fill up the details" of Section 13.110.

When presented with a similar question in the very early case of *Wayman v. South-ard,* 23 U.S. (10 Wheat) 1, 6 L.Ed. 253 (1825), Mr. Chief Justice Marshall said:

It will not be contended that Congress can delegate to the courts, or to any other tribunals, powers which are strictly and exclusively legislative. But Congress may certainly delegate to others, powers which the legislature may rightfully exercise itself. . . .

The line has not been exactly drawn which separates those important subjects, which must be entirely regulated by the legislature itself, from those of less interest, in which a general provision may be made, and power given to those who are to act under such general provisions to fill up the details.

*Id.* at 42–43, 6 L.Ed. at 263.

The considerations involved in determining whether termination or return to probationary status is appropriate are myriad. The factual context of each particular case is extremely important. Local school officials are in the most advantageous position to recommend the action best suited to effectuate the purposes of the statute. This conclusion is bolstered by the fact that notice is required and a hearing is available to the affected teacher for the presentation of evidence demonstrating that the recommendation is inappropriate or unauthorized, or evidence that the recommended cause of action is arbitrary or capricious. Implicit in this procedure is the fact that the recommendation of the superintendent must be made in good faith, must not be arbitrary or capricious, and must be reasonable in light of all the circumstances. *See United States v. Rock Royal Co-op.,* 307 U.S. 533, 574, 576, 59 S.Ct. 993, 1013, 1014, 83 L.Ed. 1446, 1470, 1472 (1939). We refuse to presume that the recommending authority has acted in violation of the above-stated implied restrictions. In the absence of countervailing evidence the superintendent's recommendation was not violative of these restrictions.[5]

---

5. We find unpersuasive appellant's argument that due process required notice and a hearing prior to Williamson's decision to recommend termination. Appellant was afforded a full and fair hearing before the decision-making body, and this comports with the due process requirements. *Opp Cotton Mills v. Administrator of the Wage and Hour Div. Dept. of Labor,*

■ Chamberlain relies heavily on *Mallonee v. Fahey,* 68 F.Supp. 418 (S.D.Cal.1946) (three-judge court), for the proposition that the delegation of power to choose between two possible remedies, where no standards or guidelines are given, is invalid. *Mallonee* dealt with a provision of the Home Owners Loan Act of 1933, which gave the Home Loan Bank Board full power to promulgate rules and regulations pertaining to the merger, consolidating, or placing in receivership of federal savings and loan associations. 12 U.S.C. § 1464(d) (1970). The district court's opinion held the act to be an unconstitutional delegation of the congressional function. The decision upon which appellant's counsel relies does not constitute authority for the position he asserts. The Supreme Court in *Fahey v. Mallonee,* 332 U.S. 245, 67 S.Ct. 1552, 91 L.Ed. 2030 (1947), reversed the district court and held that the lack of standards did not invalidate the statute.[6]

Chamberlain next argues that she was denied equal protection of the laws because the Texas Education Code Section 13.103 requires that probationary teachers be notified of a year-end termination of their employment by April 1 before their contract expires. No such time restraints are placed on the year-end termination of continuing contract teachers.[7]

■ For appellant to succeed in challenging the constitutionality of this statute, she "must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary." *Lindsley v. Natural Carbonic Gas Co.,* 220 U.S. 61, 79, 31 S.Ct. 337, 340, 55 L.Ed. 369, 377 (1911). Since this case does not involve a suspect

classification or infringe a fundamental interest, the traditional test is applied, *Conway v. Chemical Leaman Tank Lines, Inc.,* 525 F.2d 927, 931 (5th Cir. 1976). That test has been stated as follows:

> the classification must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation, so that all persons similarly circumstanced shall be treated alike.

*F. S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 561, 64 L.Ed. 989, 990–91 (1920). *See Developments in the Law-Equal Protection,* 82 Harv.L.Rev. 1065, 1079–81 (1969). Further, appellant's burden is enhanced by the presumption of validity attributed to the Texas legislature's enactment of section 13.103. *McGowan v. Maryland,* 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393, 399 (1961); *Muzquiz v. San Antonio,* 520 F.2d 993, 1001 (5th Cir. 1975), *aff'd en banc* 528 F.2d 499 (5th Cir. 1976).

■ It cannot be seriously contended that probationary contract teachers and continuing contract teachers are "similarly circumstanced" so as to require identical treatment. We read the provisions of section 13.103 of the Texas Education Code as a legislative attempt to give some quantum of employment protection to probationary teachers, who are subject to dismissal at the end of a school year if "the best interests of the school district will be served thereby." Tex.Educ.Code Ann. § 13.103 (1972). Continuing contract teachers, on the other hand, are subject to dismissal only for statutorily specified reasons, *id.* at §§ 13.109,

---

312 U.S. 126, 152–53, 61 S.Ct. 524, 535–536, 85 L.Ed. 624, 640 (1941).

**6.** It is unusual, to say the least, that counsel for appellant relies so heavily on the decision of the district court in *Mallonee* and never mentions the fact that the case was reversed by the Supreme Court on the very ground upon which appellant relies. Almost as unusual is the fact that counsel for the appellee does not even mention either citation. This court expects more accurate briefs than those presented by counsel in this case. The Amicus brief of the state of Texas correctly notes these decisions.

**7.** The April 1 notification requirement set out in Tex.Educ.Code Ann. § 13.103 (1972) is applicable in the event a probationary teacher is terminated at the end of the contract period. A probationary teacher "dismissed at the end of a school year before the end of the term fixed in his contract" is afforded the same notice, hearing, and appeal rights as a continuing contract teacher. Tex.Educ.Code Ann. §§ 13.111, 13.-112, 13.115 (1972).

13.110, they must be given notice in writing, which specifies the grounds for dismissal, *id.* at § 13.111, and have available to them hearing and appeal procedures, *id.* at §§ 13.112, 13.115. Thus as a continuing contract teacher, Chamberlain's position is much less precarious than her probationary counterpart. We conclude, therefore, that the April 1 notice requirement is not arbitrary and is reasonably related to a legitimate state interest.[8]

Appellant also argues that due process was denied her when she was not permitted to conduct a voir dire examination of the individual board members. We are not persuaded that such an examination is constitutionally required. The school board has been vested by the legislature with the authority to conduct this hearing and make the decision whether to terminate Chamberlain's contract.[9] Even if possible bias was present, such does not always rise to the level of a constitutional issue. As Mr. Chief Justice Taft said in *Tumey v. Ohio,* 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749 (1927):

> All questions of judicial qualification may not involve constitutional validity. Thus matters of kinship, personal bias, state policy, remoteness of interest would seem generally to be matters merely of legislative discretion.

*Id.* at 523, 47 S.Ct. at 441, 71 L.Ed. at 754. *See also Fahey v. Mallonee,* 332 U.S. 245, 256, 67 S.Ct. 1552, 1557, 91 L.Ed. 2030, 2040 (1947). The legislature has not provided for a substitute hearing board, but it has provided for appeals from the school board's decision. Tex.Educ.Code Ann. § 13.115 (1972). The power to provide the procedures outlined here is clearly within the legislature's power and cannot be overturned on the facts and analysis presented by Chamberlain.

Recently the Supreme Court in *Bishop v. Wood,* —— U.S. ——, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976), ruled in favor of the employer in a factual context much more favorable to the employee than are the facts in the instant case. In *Bishop,* the police officer was terminated without a hearing on charges that were assumed *arguendo* to be false.[10] In the case *sub judice,* Chamberlain was afforded a full hearing before the board as provided by statute and was allowed to make a full presentation to the district court. Moreover, the only proof presented was found by the district court to support the charge of incompetence and Chamberlain offered no evidence whatever to contradict such proof. We are unable to conclude that the finding of the district court was clearly erroneous.

Even assuming *arguendo* that Chamberlain's termination was unjustified, judicial review of that decision is available here only under extremely limited circumstances. In *Bishop* the Court succinctly held:

> The federal court is not the appropriate forum in which to review the multitude of personnel decisions that are made daily by public agencies. We must accept the harsh fact that numerous individual mistakes are inevitable in the day-to-day administration of our affairs. The United States Constitution cannot feasibly be construed to require federal judicial review for every such error. *In the ab-*

---

**8.** The district court made the following findings of fact:

> 4. Chamberlain became aware that her employer was not satisfied with her teaching as early as October, 1974. . . .
>
> 5. In January, 1975, the school district informed Chamberlain that her teaching would have to improve, or she would be terminated.

As a result, the court concluded, "It is doubtful in the first place that Chamberlain has standing to complain since she was given adequate notice prior to April 1." In light of our foregoing discussion of § 13.103, we find it unnecessary to inquire into the adequacy of the notice given appellant.

**9.** *San Antonio Independent School Dist. v. Rodriguez,* 411 U.S. 1, 52, n. 108, 93 S.Ct. 1278, 1306, 36 L.Ed.2d 16, 54 n. 108 (1973).

**10.** The Court noted that since the district court granted summary judgment for Wood, it was required to resolve all genuine disputes as to material facts in favor of Bishop. —— U.S. at ——, 96 S.Ct. at 2079 n. 11. No similar presumption applies in the instant case.

*sence of any claim 'that the public employer was motivated by a desire to curtail or to penalize the exercise of an employee's constitutionally protected rights, we must presume that official action was regular and, if erroneous, can best be corrected in other ways. The Due Process Clause of the Fourteenth Amendment is not a guarantee against incorrect or ill-advised personnel decisions.*

*Id.* at ——–——, 96 S.Ct. at 2080 (footnote omitted) (emphasis added). A careful review of the record fails to disclose any indication that the teachings of *Bishop* were violated.

The judgment is AFFIRMED.