Marcus HOLLEY, Plaintiff-Appellant,

v.

The SEMINOLE COUNTY SCHOOL DISTRICT, et al., Defendants-Appellees.

No. 84–8077.

United States Court of Appeals, Eleventh Circuit.

March 25, 1985.

Rehearing and Rehearing En Banc Denied June 12, 1985.

Eugene C. Black, Jr., Albany, Ga., for plaintiff-appellant.

William U. Norwood, Thomasville, Ga., Sam S. Harben, Jr., Phillip L. Hartley, Gainesville, Ga., for defendants-appellees.

Before KRAVITCH and ANDERSON, Circuit Judges, and ATKINS*, District Judge.

R. LANIER ANDERSON, III, Circuit Judge:

In this action under 42 U.S.C.A. § 1983, appellant Marcus Holley ("Holley") appeals the district court's grant of summary judgment in favor of appellees, Seminole County School District, et al. Holley claims that the nonrenewal of his teaching contract after a hearing held by the Seminole County Board of Education ("Board") violated his constitutional rights. Holley maintains that (1) the hearing conducted by the Board failed to comport in many respects with due process guarantees, and (2) the nonrenewal of his contract was motivated by Seminole's disdain for Holley's First Amendment protected political activity. We hold that the Board's hearing to ascertain "cause" for Holley's dismissal did not

violate due process. However, because we find that the First Amendment claim raised disputed issues of material fact which were not proper for disposition on summary judgment, we reverse and remand for a trial on the merits of that claim.

## I. FACTS AND PROCEDURAL BACKGROUND

At the end of the 1981–82 school year, Holley had been for 17 years a teacher and high school football coach in the Seminole County School District. In 1979, Holley ran for the elected position of school superintendent in a three-person race. Holley was defeated by John McLeod ("McLeod"), the current superintendent of Seminole County School District. After his defeat, Holley continued his duties as head football coach and teacher. The year after the school election, upon McLeod's recommendation, Holley was promoted to the position of athletic director. He retained his position as head football coach. During and after the time he was promoted to the position of athletic director, Holley remained involved politically, actively seeking to have local legislation enacted which would change the method of selection of local school board members from appointment by the grand jury to popular election.

On April 6, 1982, McLeod mailed Holley a written notice pursuant to Ga.Code Ann. § 20–2–941, advising Holley that his teaching contract would not be renewed for the 1982–83 school year. Thereafter, Holley, through his attorney, requested a statement of reasons for nonrenewal. On May 13, 1982, McLeod responded with a list of ten reasons for Holley's nonrenewal and a short summary of "evidence" to support each reason. In brief, Holley was charged with leaving school grounds without permission, failing to meet his responsibilities in the lunchroom, using humiliating, vulgar and profane language in the presence of male and female students during the school day, directing vulgar and profane language towards his football players, displaying a violent temper and fits of anger during

* Honorable C. Clyde Atkins, U.S. District Judge for the Southern District of Florida, sitting by designation.

football games and towards parents, students, and members of the general public, threatening students with failure in the courses he taught if they did not play football or otherwise participate in athletic programs, other general allegations of ineffectiveness as a teacher, and insubordination. Holley requested and received a hearing in front of the Board pursuant to Ga.Code Ann. §§ 20–2–940(e); 20–2–942(b)(2) (teacher who has served more than three consecutive years has right to request a hearing at which "good cause" for demotion or termination will be adjudicated). After a two-day adversary hearing at which evidence was presented and numerous witnesses were examined and cross-examined, the Board issued a written opinion finding Holley "guilty" of four of the ten charges proffered by McLeod, namely that Holley (1) left school grounds without permission during the school year; (2) failed to attend classes and assume lunchroom duties to which he was assigned; (3) used vulgar and profane language in the presence of and directed at football players, and in the presence of students during the school day; and (4) threatened students with academic failure if they did not play football. The Board specifically found no evidence or insufficient evidence of the six other charges. For instance, the Board held that the testimony of one witness that Holley yelled "God damn" during a football game was insufficient to support the charge that Holley displayed a violent temper and fits of anger directed toward referees and his coaching staff during football games. Likewise, the Board found that there was no evidence that Holley had expressed an indifference toward the health and well-being of his football players by requiring them to play or practice while injured as McLeod had charged. The Board rejected Holley's contention that the nonrenewal of his contract was the result of retaliation for Holley's political activities.

Holley appealed the decision to the Georgia State Board of Education pursuant to Ga.Code Ann. §§ 20–2–940(f); 20–2–1160(b). The State Board submitted the case to a hearing officer who, in a written opinion, found that Holley's local board hearing had comported with due process and there had been evidence before the Board which supported the Board's decision. The hearing officer's opinion sustaining the Board's decision was adopted in all respects by the State Board of Education. In June 1983, Holley sued the Seminole County School District and individual defendants in federal district court under 42 U.S.C.A. § 1983 alleging constitutional violations. In January 1984, summary judgment was entered in favor of all defendants. This appeal ensued.

## II. DUE PROCESS

■ This circuit has established a two-part due process test with respect to teacher terminations which contains both a procedural and substantive component. *Viverette v. Lurleen B. Wallace State Junior College*, 587 F.2d 191 (5th Cir.1979).[1] This court must inquire "whether the procedures followed by the school authorities comported with due process requirements, and, if so, whether the action taken is supported by substantial evidence." *Id.* at 193. We will address Holley's procedural due process arguments first and, then, decide whether there was substantial evidence in front of the Board to support legitimate reasons for the nonrenewal of Holley's contract.

### A. *Statutory Due Process*

■ Holley argues that the statute pursuant to which his hearing was conducted, the Fair Dismissal Act of Georgia, Ga. Code Ann. § 20–2–940 *et seq.*, does not comport with federal due process.[2] In *Ferguson v. Thomas*, 430 F.2d 852, 856 (5th

---

1. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

2. It is not disputed, nor could it be, that Holley had a property interest in his employment under state law which could not be terminated without a due process hearing. *See Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972) (claim of legal entitlement to property under state law triggers

Cir.1970), the former Fifth Circuit established guidelines for minimum procedural due process in situations where "a teacher who is to be terminated for cause opposes his termination...." *Ferguson* requires that the teacher be given (1) notice of the reasons for dismissal; (2) notice of the names of adverse witnesses and the nature of their testimony; (3) a meaningful opportunity to be heard; and (4) the right to be heard by a tribunal which possesses some academic expertise and an apparent impartiality toward the charges leveled against the teacher. *Id.*[3] The Fair Dismissal Act of Georgia not only meets, but exceeds, the due process standard set out in *Ferguson.* *See* Ga.Code Ann. §§ 20–2–940(b)(1)–(4); 20–2–940(d); 20–2–940(e)(1)–(4); 20–2–940(f); 20–2–1160. Therefore, Holley's argument that the statute on its face does not comport with due process is without merit.[4]

### B. *Identity of Hearing Examiner*

■ The Board employed its regular attorney, Kenneth Hornsby, to serve as hearing examiner at Holley's hearing. Hornsby made evidentiary rulings and generally ran the hearing. Holley argues that Hornsby was necessarily partial because of his regular employment with the Board of Education. In addition, there is some indication in the record that Hornsby assisted in the preparation of the "case" against Holley. Holley maintains that Hornsby's dual roles as employee/assistant of the Board and impartial hearing referee are so fundamentally inconsistent as to violate due process. However, the case law generally allows for an administrative tribunal on which sit actors who have played both an investigative and adjudicatory role. In *Burney v. Polk Community College,* 728 F.2d 1374, 1378 n. 11 (11th Cir.1984), this court permitted such an administrative tribunal in the absence of a showing of actual bias. *See also Withrow v. Larkin,* 421 U.S. 35, 95 S.Ct. 1456, 43 L.Ed.2d 712 (1975) (a procedure whereby a state examining board, with statutory power to warn and reprimand a physician and to temporarily suspend a physician's license, both investigated and adjudicated a physician's case did not violate due process of law); *Richardson v. Perales,* 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (system in which a Social Security examiner has responsibility for developing the facts and making a decision as to disability claims does not violate due process). In light of the foregoing, and the fact that Holley has not shown any actual bias on the part of Hornsby, we hold that the fact that Hornsby sat as hearing examiner at Holley's hearing does not violate due process.

### C. *Hearing by the Professional Practices Commission*

■ Under Ga.Code Ann. § 20–2–940(e)(1), the Fair Dismissal Act of Georgia

---

procedural guarantees of the due process clause). The Fair Dismissal Act of Georgia creates a property interest for all teachers, who, like Holley, have been under contract to a particular local board of education for four consecutive years or more by affording them the right to have their annual teaching contracts renewed except for "good cause" shown for nonrenewal. Ga.Code Ann. §§ 20–2–942(b)(1); 20–2–940(a)(1)–(8) (enumerating "good cause" for termination, suspension or nonrenewal). Since Holley has a state-created property interest within the meaning of the Fourteenth Amendment, the only question is whether the statute on its face, *see infra* Part II.A., or as applied, *see infra,* Part II.B. through F., afforded Holley the process which was due under the circumstances. *Goss v. Lopez,* 419 U.S. 565, 577, 95 S.Ct. 729, 738, 42 L.Ed.2d 725 (1975); *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484 (1972).

**3.** The *Ferguson* case is still followed in this circuit. *See, e.g., Burney v. Polk Community College,* 728 F.2d 1374, 1378 n. 11 (11th Cir.1984).

**4.** Appellees argue that by abiding by the statute it has met or exceeded the minimum due process requirements. As indicated in the text, *supra,* we agree that the statute on its face comports with due process. Whether Seminole in fact gave Holley due process is taken up in Parts II.B. through F., *infra.* This is not to say that Holley's hearing might not have met due process even if the statute did not do so, or if there were no statutory procedures at all. "When no established procedures exist, the school may adopt any method that is adequate to comply with [due process] minimums." *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir. 1970).

provides that the due process hearing may be conducted before the local board of education as was done in this case. In addition, the local board *may* refer the matter for a hearing by the Professional Practices Commission ("PPC"). The PPC is an independent commission consisting of elementary school teachers, secondary school teachers, an elementary school principal, a secondary school principal, local superintendents, and a representative of the Department of Education, all of whom are appointed by the state school superintendent. *See* Ga.Code Ann. § 20–2–793. Holley argues that the Board's failure to refer his case to the PPC was a denial of due process. He contends that his case was suited for adjudication in front of the PPC because of the "political" atmosphere in which the nonrenewal of his contract took place. First, it is important to note that Holley's claim of political reprisal does not distinguish his case from many others in which a teacher claims that the dismissal, suspension, or demotion was retaliation for First Amendment protected activity. Moreover, Holley does not cite, nor can we find, any case law which suggests that the statutory provision for referral of cases to the PPC is anything but a matter of absolute discretion lodged in the local board. Adjudication in front of the PPC or an analogous independent adjudicatory body is certainly not required by federal due process. *See Ferguson v. Thomas*, 430 F.2d at 852; *cf.* Part II.B., *supra.* Thus, Holley's argument in this regard is without merit.

### D. *Voir Dire of the Board*

■ At the hearing, Holley requested permission to voir dire the Board members so as to investigate for potential bias. The hearing examiner denied Holley's request. Holley maintains that this denial violated due process. *Chamberlain v. Wichita Falls Ind. Sch. Dist.*, 539 F.2d 566 (5th Cir.1976), indicates that this contention is without merit. In *Chamberlain*, the court held that voir dire of individual board members in a teacher due process hearing was not constitutionally required. *Id.* at 571. "Even if possible bias was present, such

does not always rise to the level of a constitutional issue." *Id.* At the hearing, Holley conclusorily alleged that the Board members were biased, but failed to proffer any specific evidence. If Holley had made an offer of proof concerning specific instances of bias, such as prehearing public statements indicating severe prejudgment of the case or similar evidence showing significant bias, a voir dire may have been necessary to substantiate such allegations. Since Holley's argument amounts to no more than a claim of right to voir dire each board member without cause, it is clear that *Chamberlain, supra,* forecloses relief under the due process clause.

### E. *Hiring of "Replacement" by Board*

■ Prior to Holley's hearing, the Seminole County School District hired Walter Landing to serve as head football coach at Seminole County High School. Holley argues that this indicates that the Board had prejudged him before the hearing took place or, at the least, it raises a question of fact as to the Board's impartiality. We disagree. As admitted by counsel for Holley at oral argument and as indicated by testimony in the record and by the findings of the State Board of Education, both Holley's contract and Landing's contract contain provisions whereby they could be reassigned to different teaching positions in the school system if the need arose. Thus, Holley's claim that the school district would have been facing a suit by Landing for breach of contract if the Board had ruled in Holley's favor is incorrect. For example, if Holley had won reinstatement at the hearing, he could have retained his position as athletic director and teacher of general business courses and, perhaps, expanded his activities in the classroom or in sports other than football, while Landing remained in his newly acquired position of head football coach. This would not amount to nonrenewal, termination, or suspension of Holley within the meaning of the Fair Dismissal Act of Georgia. *See* Ga.Code Ann. §§ 20–2–940; 20–2–942; *cf. County Bd. of Ed. of Richmond County v. Young*, 187 Ga. 644, 1 S.E.2d 739 (1939)

(under predecessor statute, school has right to transfer employee from one position to another; hearing to prove "good cause" is required when salary decrease accompanies transfer).

The case of *Bhargave v. Cloer*, 355 F.Supp. 1143 (N.D.Ga.1972), cited by Holley, is readily distinguishable. In *Bhargave*, a teacher dismissal case, the court found a denial of due process, not because the Board had exhibited partiality, but because the teacher had actually been cut from the payroll and a new teacher had begun teaching the plaintiff's classes *prior to* the hearing and administrative decision. *Id.* at 1145 & n. 3. The court's holding simply required that a *pretermination* hearing be conducted, *i.e.*, that a teacher be given a hearing prior to the actual termination of her employment benefit. *Compare Goldberg v. Kelly*, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970) (pretermination hearing required before loss of welfare benefits). In the instant case, Holley was given notice, hearing, and the Board's decision in advance of his termination from the payroll and well prior to when Landing's responsibilities were to begin the next fall. *See* Ga.Code Ann. § 20-2-941 (notice of non-renewal must be sent to teacher no later than April 15 of the current contract year). Of course, McLeod had made a *provisional* determination that Holley's contract would not be renewed, but that is only a logical prerequisite to the pretermination "good cause" hearing at which the teacher can defend against the charges. Thus, we hold that the mere fact that a replacement has been hired to assume the duties of a provisionally nonrenewed or terminated teacher prior to that teacher's hearing where the school district has retained by contract the right to rearrange the teaching duties of its teachers does not as a matter of law violate due process.

## F. Substantial Evidence

Having found that Holley's hearing comported with procedural due process, we must decide, as did the district court, whether the Board's decision finding "good cause" not to renew Holley's teaching contract was supported by substantial evidence.[5] *Viverette v. Lurleen B. Wallace State Junior College*, 587 F.2d at 194. We do not review the evidence *de novo* to see if in our judgment there was "cause" not to renew Holley's contract, *id.* at 191; rather, the purpose of this limited substantive review is to meet the requirement of due process, that there be a rational basis for the deprivation of an individual's property. *Goldberg v. Kelly, supra*, 397 U.S. at 271, 90 S.Ct. at 1022 ("decisionmaker's conclusion ... must rest solely on ... evidence adduced at the hearing"); *Rozman v. Elliott*, 335 F.Supp. 1086, 1088 (D.Neb.1971) (Due Process Clause prevents teacher firing at public university which was arbitrary or capricious), *aff'd*, 467 F.2d 1145 (8th Cir.1972). It serves as a bulwark to our procedural due process review, in that a decision without basis in fact would tend to indicate that the procedures, no matter how scrupulously followed, had been a mockery of their intended purpose—rational decisionmaking. *See Goldberg v. Kelly, supra; cf. Sterling Davis Dairy v. Freeman*, 253 F.Supp. 80, 82 (D.C.N.J.1965) ("It is to be noted that the 'substantial evidence' test [under the Administrative Procedure Act] itself is closely related to the [procedural] due process concept. An administrative ruling not reasonably supported by the proofs is, hence, violative of due process because of its inherently arbitrary character").

After a review of the administrative record, we find that there is substantial evidence to support the Board's

---

5. The substantial evidence finding is one proper for the district court sitting in a summary judgment posture. The court does not generate its own record and find facts; rather, it decides whether the facts as presented by the administrative record meet a certain minimum quantum of evidence. Such a determination is similar to a trial judge's determination that a direct-

ed verdict should be granted, or an appellate court's determination, based on a review of the record, that the trial court's facts as found are "clearly erroneous." Thus, the substantial evidence inquiry, though a factual review of a sort, is a question of law for the court which can be

findings of "cause"[6] not to renew Holley's contract.[7] For instance, Lewis Bonner, Holley's superintendent, testified that, among other things, Holley repeatedly left school grounds without permission. Bonner's testimony is sufficient in itself to meet the substantial evidence test with regard to that charge. The testimony of Wilma Jones, a vocational supervisor at the high school, readily supports the charge that Holley failed to attend classes and assume lunchroom duties to which he was assigned. The testimony of Danny Coachman and Willie Conley, though drawn into question on cross-examination and rebuttal, is sufficient to support the charge that Holley threatened students, at least implicitly, with academic failure if they did not play football. Finally, the testimony of Darryll Brown and Reginald Donalson, among others, is sufficient to support the charge that Holley directed profanity at students, despite Holley's testimony to the contrary.

### III. FIRST AMENDMENT CLAIM

 Holley argues that his teaching contract was not renewed in retaliation for his First Amendment protected political activity. Holley may establish a claim to reinstatement and/or damages if the decision was made by reason of his exercise of constitutionally protected First Amendment freedoms. *Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972). The legal standard by which such First Amendment claims of public school teachers must be judged was enunciated by the Supreme Court in *Mt. Healthy City Board of Education v. Doyle,* 429 U.S. 274, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). First, the court must determine whether the plaintiff's activity was indeed protected by the First Amendment. There is no question, nor do the appellees dispute, that Holley's candidacy

for school superintendent and his efforts to alter the method for selecting school board members are protected by the First Amendment. Involvement in the political process is central to the meaning of the First Amendment, and Seminole County School District could not have prevented Holley from being so involved. *See Pickering v. Board of Education,* 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968). After establishing that the activity is protected, the plaintiff has the initial burden of proving that the conduct was a substantial or motivating factor in the state employer's decision to take adverse employment action against the plaintiff. Having done so, the burden shifts to the employer to show by a preponderance of the evidence that the same employment decision would have been rendered absent the protected conduct. *Mt. Healthy,* 429 U.S. at 287, 97 S.Ct. at 576; *see also Paschal v. Florida Public Employment Relations Commission,* 666 F.2d 1381, 1384 (11th Cir.), *cert. denied,* 457 U.S. 1109, 102 S.Ct. 2911, 73 L.Ed.2d 1319 (1982).

The district court seemingly relied on the second part of the *Mt. Healthy* test, holding that even if the Board's finding was motivated by Holley's protected conduct, "it is abundantly clear that the decision not to renew Holley's contract would have been reached entirely apart from and in total disregard for his politics." The district court held that there was no genuine issue of material fact with respect to the *Mt. Healthy* issue and, therefore, granted summary judgment in favor of the defendants. We disagree with this determination.

 Aside from the legal issue of whether certain conduct is protected by the First Amendment, the *Mt. Healthy* determination is a question of fact. *Allen v. Autauga County Board of Education,* 685 F.2d 1302, 1305 (11th Cir.1982) ("Proof of

---

made upon a review of the administrative record.

**6.** The charges levied against Holley fall within the definitions of "cause" in the relevant Georgia statute. *See* Ga.Code Ann. §§ 20-2-940(a)(1)–(8).

**7.** The issue of whether there are sufficient facts in the administrative record to support the nonrenewal of Holley's contract is separate and distinct from the issue of whether the Board was motivated not to renew Holley's contract because of his political activity. *See* Part III, *infra.*

causation under the *Mt. Healthy* test is a question of fact"); *Paschal v. Florida Public Employment Relations Commission*, 666 F.2d at 1384–85, which generally must be resolved by the jury or judge sitting as factfinder. *Peacock v. Duval*, 694 F.2d 644, 646–48 (9th Cir.1982); *Paschal*, 666 F.2d at 1385. Ordinarily, then, we would simply ask whether there existed a genuine dispute as to any fact material to the district court's *Mt. Healthy* finding. *See* Fed.R.Civ.P. 56(c). In the instant case, however, the district court intimated and appellees argue that because Holley's claims were adjudicated at a hearing, the *Mt. Healthy* claim, like the issue of whether there existed "cause" to nonrenew, is subject to the substantial evidence standard or some other standard of deference to the administrative tribunal. We are convinced, on the contrary, that Holley's First Amendment claim, like other claims of substantive constitutional right, must be given *de novo* review in the district court.

 We start with the proposition that Holley was not required to appear before the Board in order to bring his First Amendment claim in federal court. A plaintiff suing under § 1983 need not exhaust or make use of administrative remedies prior to, or in lieu of, bringing a claim of denial of constitutional right to federal court. *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982); *McNeese v. Board of Education*, 373 U.S. 668, 83 S.Ct. 1433, 10 L.Ed.2d 622 (1963); *Monroe v. Pape*, 365 U.S. 167, 183, 81 S.Ct. 473, 481, 5 L.Ed.2d 492 (1961). We turn, then, to the question whether because Holley has made use of the hearing process to challenge the Board's determination of "good cause" for his dismissal, Holley's First Amendment claim should be given less scrutiny in the district court.[8] We reiterate that whether there was "good cause" not to renew Holley's contract is

not a *de novo* inquiry. However, such an inquiry is fundamentally different from one which is designed to protect First Amendment freedoms, primarily because the former is a question of state law. *See* Ga.Code Ann. § 20–2–940(a)(1)–(8) (enumerating "good cause" criteria). The property interest that Holley has in his employment exists by virtue of the state requiring "good cause" not to renew his contract, *see* Part II, *supra*; state-created procedures, if in keeping with due process, are generally adequate to safeguard such interests. *Cf. Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981). The same is not true for federal rights, both constitutional and statutory, whose traditional guardian has been the federal courts. *See McNeese*, 373 U.S. at 674, 83 S.Ct. at 1437 ("Such [constitutional] claims are entitled to be adjudicated in the federal courts"); *cf. Mt. Healthy*, 429 U.S. at 283, 97 S.Ct. at 574 (even if employee has no "property interest" in employment, he may nonetheless state a claim in federal court to reinstatement if the decision not to rehire him was made in retaliation for exercise of First Amendment rights).

 The new Fifth Circuit has recently held that the *Mt. Healthy* issue may not be disposed of by simply engaging in a substantial evidence review of a college board of trustees hearing. *Professional Ass'n of College Educators v. El Paso County Community College District*, 730 F.2d 258, 264–67 & nn. 9–12 (5th Cir.) ("PACE") (discussing old Fifth Circuit precedent), *cert. denied*, —— U.S. ——, 105 S.Ct. 248, 83 L.Ed.2d 186 (1984). We find the *PACE* court's reasoning persuasive. The court recognized that the issue in a *Mt. Healthy* case is not whether there is objective "cause" to fire an employee, but rather whether the employer was motivated by an

8. It should be noted that Holley's defense at the hearing was very much based upon the facts he would like to adduce to support his First Amendment claim. Although he disputes some of the evidence in the record to support the Board's "cause" determination, his basic challenge is that the Board's decision was motivated by disdain for and fear of his First Amendment

political activity. He attempts to support this position not merely by the fact of his political activity, but also by reference to evidence that other teachers and school administrators who did not engage in political activity but had engaged in similar "misconduct" were not disciplined as he was.

unconstitutional desire to discharge an individual in retaliation for his First Amendment activity. *Id.* at 265. Where such First Amendment activity is involved, the district court must do a searching review of its own. "When presented with a claim that a faculty member was discharged in retaliation for exercising first amendment rights, a federal court does not sit simply to review administrative findings or to measure the procedural regularity of the process." *Id.* at 264. The court noted that because § 1983 vests original, not appellate, jurisdiction in the district court, deference to the administrative record and factfinding is inappropriate when the claim is that "an unconstitutional result could be reached despite procedural ... regularity and substantial evidence to support [the Board's] conclusion." *Id.* at 264 n. 9, citing *Ferguson v. Thomas*, 420 F.2d at 859. The *PACE* court, thus, concluded that it was proper for the district court to have engaged in a *de novo* review on the First Amendment claim and that the jury's decision in favor of the plaintiff was supported by the evidence presented in the district court. *Id.* at 264–67.[9] This circuit has implicitly agreed with the *PACE* court's analysis by assuming, without deciding, that a *Mt. Healthy* finding is a *de novo* question for the federal court. Such a *de novo* review has been tacitly approved in several cases in this circuit in which discharged public employees had first resorted to administrative hearings at which those employees had pressed their First Amendment claims. *See Leonard v. City of Columbus*, 705 F.2d 1299, 1306 (11th Cir.1983), *cert. denied*, —— U.S. ——, 104 S.Ct. 3571, 82 L.Ed.2d 870 (1984); *Williams v. City of Valdosta*, 689 F.2d 964, 968 (11th Cir.1982); *Clemons v. Dougherty County*, 684 F.2d 1365, 1368–71 (11th Cir. 1982); *Goss v. San Jacinto Junior College*, 588 F.2d 96 (5th Cir.), *modified on reh'g on other grounds*, 595 F.2d 1119 (1979); *Stewart v. Bailey*, 561 F.2d 1195

(5th Cir.) (remanded to district court in light of *Mt. Healthy*), *rev'g on reh'g*, 556 F.2d 281 (1977). *Cf. Baylor v. Jefferson County Bd. of Educ.*, 733 F.2d 1527 (11th Cir.1984) (after hearing, where school board rejected teacher's claim that demotion was motivated by race discrimination, plaintiff's Title VII claim given *de novo* review in federal courts). In *Williams*, for example, the plaintiff alleged that he was demoted by the city fire department in retaliation for protected First Amendment conduct. The city held a hearing at plaintiff's request, but plaintiff obtained no relief. *Williams*, 689 F.2d at 968. Plaintiff then sued in federal district court under § 1983, alleging a *Mt. Healthy* claim. The jury found for the plaintiff and awarded damages, but the trial judge granted the city a judgment notwithstanding the verdict or, in the alternative, a new trial. On appeal, this court reversed. After a careful review of the facts, the court found that the jury's determination was sufficiently supported by the evidence under a *Mt. Healthy* analysis to withstand both motions for a jnov and a new trial. *Id.* at 969–76. The discussion in *Williams* makes clear that both the jury's inquiry and the sufficiency inquiry by the court of appeals were *de novo*, without deference to the record or factfinding of the administrative hearing.[10] Similarly, in *Clemons*, a police sergeant claimed that his discharge was impermissibly based upon his exercise of First Amendment rights. After a hearing in front of the city board of commissioners, he filed suit under § 1983. The district court, as in the instant case, granted defendant's motion for summary judgment. The court of appeals reversed and remanded, holding that there were disputed issues of material fact which prevented summary judgment under *Mt. Healthy*. *Clemons*, 684 F.2d at 1369. Importantly, this court relied *solely* on the record developed by the

---

9. *PACE* held that even if the administrative tribunal had considered all the evidence with respect to plaintiff's First Amendment claim (which, apparently, it had not), the district court properly could engage in a *de novo* review. *PACE*, 730 F.2d at 264 & n. 8.

10. It is possible that the city did not seek to rely on the hearing record, although that is unlikely since the hearing had resulted in a decision favorable to the city. The plaintiff in *Williams* apparently made no due process challenge to the adequacy of the hearing itself.

district court, not by the administrative tribunal. *Id.*[11]

■ Research into an analogous area of the law bolsters our conclusion that Holley has a right to *de novo* review. of his *Mt. Healthy* claim in district court. Title VII of the Civil Rights Act of 1964, 42 U.S.C.A. §§ 2000a, *et seq.*, like the *Mt. Healthy* test, provides a remedy for employment discrimination. In *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974), the Supreme Court held that an arbitrator's decision that a union employee's discharge was not racially discriminatory was not binding on the federal court and, thus, the employee's Title VII action should be heard *de novo* in district court.[12] Despite the fact that the employee was obligated to make use of the grievance procedures to challenge any action taken by the company under the broad terms of his collective-bargaining agreement, *see Republic Steel Corp. v. Maddox*, 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965), and that an employee will ordinarily be bound by the outcome of such grievance procedures, *see, e.g., Vaca v. Sipes*, 386 U.S. 171, 184, 87 S.Ct. 903, 913, 17 L.Ed.2d 842 (1967), the Court unanimously held that "the rights conferred [by Title VII] can form no part of the collective-bargaining process since waiver of these rights would defeat the paramount purpose behind Title VII." *Alexander*, 415 U.S. at 51, 94 S.Ct. at 1021. Moreover, "[t]he actual submis-

sion of [plaintiff's claim of discrimination] ... to arbitration in the present case does not alter the situation." *Id.* at 52, 94 S.Ct. at 1021.[13] The same reasoning must prevail with respect to Holley's *Mt. Healthy* claim.[14] Holley need not have resorted to the Board hearing, *Patsy v. Florida Board of Regents, supra,* 457 U.S. at 496, 102 S.Ct. at 2557, nor need the state have protected his interest in employment for him to retain his First Amendment rights under *Mt. Healthy. Perry v. Sindermann, supra,* 408 U.S. at 597–98, 92 S.Ct. at 2697–98. The fact that Holley did first seek the relatively informal and inexpensive means of the Board hearing at which he argued, among other things, that the nonrenewal of his contract was tied to his protected First Amendment activities, does not mean he should be punished for doing so by allowing a less than full adjudication of his First Amendment claim in federal court. Such a policy would discourage the use of Board hearings at which the settlement of all issues (contractual, statutory, and constitutional) might well be accomplished without resort to federal court. As the *Alexander* court put it:

A deferral rule also might adversely affect the arbitration system as well as the enforcement scheme of Title VII. Fearing that the arbitral forum cannot adequately protect their rights under Title VII, some employees may elect to bypass arbitration and institute a lawsuit. The

11. The court also entertained the plaintiff's due process claims, and held that there were disputed issues of material fact as to whether the plaintiff was entitled to a due process hearing and, if so, whether the hearing the plaintiff had afforded due process. *Clemons v. Dougherty County,* 684 F.2d 1365, 1373, 1375 (11th Cir. 1984). The court discussed the plaintiff's due process and *Mt. Healthy* claims in entirely separate parts of its opinion, and did not even intimate that a proper due process hearing might implicate the *Mt. Healthy* issue. ·

12. In *Barrentine v. Arkansas-Best Freight System, Inc.,* 450 U.S. 728, 101 S.Ct. 1437, 67 L.Ed.2d 641 (1981), the Supreme Court extended the *Alexander* analysis by holding that an arbitrator's decision is not binding with respect to a union member's claim under the minimum wage provisions of the Fair Labor Standards Act. *See also Amaro v. Continental Can Co.,* 724

F.2d 747 (9th Cir.1984) (union member need not exhaust pension claims procedures, nor be bound by the outcome of such procedures, when raising a statutory claim of denial of pension rights under § 510 of ERISA; citing *Alexander* as precedent). *Contra Kross v. Western Electric Co.,* 701 F.2d 1238 (7th Cir.1983).

13. By analogy to this case, Holley should not be prejudiced by the fact that his argument in front of the Board implicitly stated his First Amendment claim, and the Board decided such claim adversely to Holley. *See* discussion in text, *infra.*

14. *Alexander* recognized that claims of employment discrimination under § 1983 are analogous to those under Title VII. *Alexander v. Gardner-Denver Co.,* 415 U.S. 36, 47 & n. 7, 94 S.Ct. 1011, 1019 & n. 7, 39 L.Ed.2d 147 (1974).

possibility of voluntary compliance or settlement of Title VII claims would thus be reduced, and the result could well be more litigation, not less.

*Alexander,* 415 U.S. at 59, 94 S.Ct. at 1025.

■■■ In light of the foregoing, we hold that a discharged or nonrenewed teacher asserting a claim of First Amendment right under *Mt. Healthy* is entitled to a *de novo* hearing in federal court regardless of whether that teacher resorted to an administrative hearing or whether such hearing purported to decide the constitutional issue. The policy enunciated by § 1983 in vesting original jurisdiction for constitutional claims [15] in the district court requires no less.

We turn now to whether Holley's *Mt. Healthy* claim was properly adjudicated at the summary judgment stage. "Summary judgment should be granted only if there is no genuine issue of material fact and ... the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is on the moving party to show that no material fact is in dispute. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). The court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *Id.* at 157, 90 S.Ct. at 1608. Summary judgment may be inappropriate when the parties agree on the basic facts, but disagree about the proper inferences to be drawn from such facts. *Lighting Fixture and Electric Supply Co. v. Continental Ins. Co.,* 420 F.2d 1211, 1213 (5th Cir.1969).

■■■ Applying these standards to the evidence in the case, *see Clemons v. Dougherty County,* 684 F.2d at 1368–70, we conclude that the district court erred in granting summary judgment on Holley's First Amendment claim. Even assuming that the parties had agreed to rely on the hearing record at the summary judgment stage,[16] conflicting inferences can be drawn from the facts. Testimony at the hearing revealed substantial evidence to justify the Board's decision not to renew Holley's contract. However, as indicated in Part II.F., *supra,* Holley had countered that testimony to some degree. Holley also countered with the facts, admitted by the Board, that he had engaged in political activity regarding the method of selection of Board of Education members and, earlier, had run for school superintendent. Holley infers from such facts that the Board's decision not to renew his contract was a direct reaction to political activity which threatened their positions in the county educational structure. The Board admitted in its opinion that Holley's political activity may have played a role (which would certainly permit an inference under the first part of the *Mt. Healthy* test that the political activity was a substantial or motivating factor), but stated that even if its decision was motivated in part by Holley's activity, the decision not to renew his contract would have been made anyway in light of the overwhelming evidence of Holley's misconduct. As we have held, this finding by the Board is not entitled to deference.

---

**15.** It is clear that plaintiffs have the right to *de novo* federal court review of other constitutional claims. For instance, Holley has charged that the hearing he received did not comport with due process. It would be a complete abrogation of our responsibility if we did not review such a claim *de novo* as we did in Part II, *supra.* Nor could we be bound by an administrative tribunal's holding that the procedures it employed comported with federal due process. *See Walker v. Hughes,* 558 F.2d 1247, 1254 (6th Cir.1977) ("[E]xecutive officials cannot create a liberty interest and then provide procedural protections beyond the review of the courts. Property and liberty guarantees secure the individual against arbitrary government action ...

and constitutional protection of liberty and property requires that the final judgment regarding the procedural safeguards be invested in the judiciary"). We can no more permit administrative tribunals to be the final adjudicators of First Amendment claims than of procedural due process claims.

**16.** Apparently, Holley attempted at least to supplement the hearing record on his First Amendment claim. At the time the district court granted summary judgment, Holley had noticed several depositions. The depositions were to take place five days after the date on which the district court entered judgment on behalf of the defendants.

The Ninth Circuit has held recently that First Amendment claims under *Mt. Healthy*, because they involve issues concerning an employer's motivation, are reserved for the trier of fact. *Peacock v. Duval, supra,* 694 F.2d at 646. The court held that issues of motivation are generally improper for disposition on summary judgment because "[w]ithout a searching inquiry into ... motives, those intent on punishing the exercise of constitutional rights could easily mask their behavior behind a complex web of *post hoc* rationalizations." *Id.* We need not decide, however, whether Holley's political activity alone raises an inference which precluded summary judgment. Holley also claimed that other teachers, including the school principal, had engaged in behavior similar to that with which Holley was charged by the Board, but those teachers had not been punished. The Board refused to hear testimony on this issue despite repeated efforts by Holley's attorney [17] and the district court held that such evidence was legally irrelevant. We disagree. If other teachers had been engaged in similar improper conduct known to the superintendent, other administrators, and/or the Board of Education and those teachers were not disciplined, an obvious inference is raised that Holley was disciplined for reasons other than the improper teacher conduct. Holley should have been allowed to present such evidence in the district court because it would have tended to indicate that the Board's reasons for nonrenewal were pretextual. Support for this conclusion is derived from the leading Title VII case of *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). In *McDonnell Douglas,* the black plaintiff had been accused of illegal activity against the employer. The employer cited such unlawful conduct as a "legitimate nondiscriminatory reason" to meet plaintiff's prima facie case of employment discrimination. The Supreme Court accepted this reason, but then held that the plaintiff had to be given the opportunity to rebut this "legitimate" reason. Plaintiff must

> be afforded a fair opportunity to show that petitioner's stated reason for respondent's rejection was in fact pretext. Especially relevant to such a showing would be evidence that white employees involved in acts against petitioner of comparable seriousness to the "stall-in" were nevertheless retained or rehired. Petitioner may justifiably refuse to rehire one who is engaged in unlawful, disruptive acts against it, but only if this criterion is applied alike to members of all races.

*Id.* at 804, 93 S.Ct. at 1825. Holley makes the same type of claim in the *Mt. Healthy* context. Again, the issue is not whether the Board had objective reason not to renew Holley—it apparently did—but, rather, what in fact motivated the Board in light of Holley's political activity. *See PACE,* 730 F.2d at 265 ("plaintiff has right to prove unequal treatment or discriminatory enforcement").

Since the district court erred in not letting Holley present this evidence of unequal treatment, we must accept Holley's contention in this regard as true. That being the case, summary judgment should not have been granted.[18] The district court factfinder should have been permitted to assess the Board's motivation based upon a full record. On remand, Holley should have the opportunity to create such a record on the merits of his First Amend-

17. Because of our disposition of the First Amendment claim, we need not decide whether the Board's refusal to hear such testimony was itself a due process violation. As we have indicated in the text, *supra,* the basic responsibility of a local board of education is to determine whether there is "cause" under the Fair Dismissal Act of Georgia to suspend, terminate, or nonrenew the teaching contract. The Board served this purpose in the instant case, both procedurally and substantively. *See* Part II, *supra.* Certainly, the Board was not obligated to adjudicate Holley's constitutional claim simply because Holley raised it at the hearing. *But see PACE,* 730 F.2d at 264 n. 8.

18. After oral argument, appellees moved to file a supplemental brief to address issues relating to the propriety of summary judgment. Although we initially denied the motion, upon reconsideration, that motion is granted; appellees' supplemental brief has been considered.

ment claim. Accordingly, the district court's judgment is

AFFIRMED in part, REVERSED in part, and REMANDED for proceedings consistent with this opinion.