875 F.2d 839
 53 Ed. Law Rep. 1113
 John C. MARTIN, Plaintiff-Appellant,
v.
Robert M. GUILLOT, individually and in his official capacity
as President of the University of North Alabama; Billy Don
Anderson, C. L. Beard, John T. Bulls, Jr., L. Lonnie Flippo,
H. Grady Jacobs, E. A. Nelson, Jr., Mary Ella Potts, Jesse
Rush, Gene Sanderson, Wayne Teague and George C. Wallace, in
their official capacities as Trustees of the University of
North Alabama, Defendants-Appellees.
John C. MARTIN, Plaintiff-Appellant,
v.
Robert M. GUILLOT, Billy Don Anderson, C. Leonard Beard,
John T. Bulls, Lonnie Flippo, Alex Nelson, Jr., Mary Ella
Potts, Jesse L. Rush and Gene Sanderson, individually and in
their official capacities as officers and trustees of the
University of North Alabama, Defendants-Appellees.
John C. MARTIN, Plaintiff-Appellee,
v.
Robert M. GUILLOT, individually and in his official capacity
as President of the University of North Alabama,
et al., Defendants-Appellants.
John C. MARTIN, Plaintiff-Appellee,
v.
Robert M. GUILLOT, et al., Defendants-Appellants.
 Nos. 88-7134, 88-7143.
 United States Court of Appeals,
Eleventh Circuit.
 June 14, 1989.
 
 Baxley, Dillard & Dauphin, Joel E. Dillard, Birmingham, Ala., Lindsey Mussleman Davis, Holt, McKenzie, Hold & Mussleman, Florence, Ala., for plaintiff-appellant.
 Ernest N. Blasingame, Jr., Florence, Ala., for defendants-appellees.
 Appeals from the United States District Court for the Northern District of Alabama.
 Before HILL and VANCE, Circuit Judges, and ATKINS*, Senior District Judge.
 HILL, Circuit Judge:
 
 
 1
 A tenured member of a state university's administrative staff was discharged from employment. He commenced this section 1983 case. He now appeals a district court order denying his reinstatement to his former position. Appellees cross-appeal the part of the same order holding them in continued contempt for failing to provide Mr. Martin with procedural due process in 1984. Consequently, appellees also oppose the imposition of a sanction against them and an award of attorneys' fees for appellant.
 
 
 2
 We affirm the district court's denial of appellant's motion for reinstatement. However, we reverse the order holding cross-appellants in continued contempt and imposing a sanction. Appellant is entitled to an award of attorneys' fees for actions through December 3, 1987, the date that appellees fully afforded appellant his due process rights.
 
 BACKGROUND
 
 3
 Appellant, John C. Martin, began employment as an instructor at Florence State University, now the University of North Alabama (UNA), in 1966. Eight years later, Mr. Martin, assured of retaining his tenured status, accepted an administrative position as the Director of Student Affairs. By the autumn of 1983, Mr. Martin's chronic obesity led to a dependency on prescription drugs that deleteriously affected his work performance. In February, 1984, after numerous absences from work and a month-long stay in a drug detoxification hospital, Mr. Martin was notified by Dr. Robert M. Guillot, the President of UNA, that his employment was terminated.
 
 
 4
 After Dr. Guillot rejected Mr. Martin's request to convene a due process hearing to review his employment termination, Mr. Martin filed a complaint against Dr. Guillot in both his official and individual capacities and against the members of the UNA Board of Trustees in their official capacities only. Mr. Martin sought a preliminary injunction pursuant to 42 U.S.C. Sec. 1983 to require a due process hearing and order continued compensation from the date of his purported employment termination to the date of the hearing. In addition, Mr. Martin sought an award of reasonable attorneys' fees. Following a non-jury trial, the district court, on April 30, 1984, found that Martin had a property interest in his expected continued employment and ordered the defendants to convene a due process committee hearing and make available review procedures in accordance with the provisions of the Employees Personnel Handbook. The court also ordered that plaintiff be compensated through the date of the due process hearing and instructed plaintiff's counsel to file the claim for attorneys' fees and expenses in accordance with the rules of the court.[1]
 
 
 5
 After a hearing at which the parties presented evidence and elicited testimony, a five-member due process committee voted unanimously to recommend termination of Mr. Martin's employment. Upon his review, Dr. Guillot agreed with the committee's recommendation, and, as president, gave Mr. Martin final notice of his termination. Mr. Martin appealed the termination decision to the board of trustees. Without reviewing the exhibits and depositions introduced at the committee hearing or listening to a tape recording of the hearing, the trustees affirmed the termination decision on June 11, 1984.
 
 
 6
 In September, 1984, Mr. Martin filed a second suit against Dr. Guillot and the trustees. The district court construed the defendants' motion to dismiss as a motion for summary judgment and granted summary judgment in favor of the defendants. On appeal, this court in an unpublished opinion remanded the action in part, directing the defendants "to accord Martin whatever procedure the Constitution required under sec. 1983." In an amended complaint, Martin petitioned the district court for an order holding defendants in contempt of the court's previous order, and requiring that they purge themselves of that contempt by reinstating him to his former position with back pay and reimbursing his attorney's fees.
 
 
 7
 In an order entered October 7, 1987, the district court found the defendants in contempt for failing to comply with its order of April 30, 1984, requiring the trustees to provide meaningful review of the decision of the due process committee. Therefore, the court ordered the trustees to read the transcript of the due process committee's hearing and to conduct an appellate review hearing. The board of trustees was given the option of considering supplementary testimony and evidence on a de novo basis in addition to reviewing the record considered by the due process committee.[2] The court retained jurisdiction both to monitor compliance with the order and to determine later the appropriate sanction for the defendants' previous non-compliance. In November, each trustee signed an affidavit certifying that he or she had read the record transcript, and on December 3, 1987, the trustees heard argument from both parties. Without considering supplementary evidence and testimony, the board affirmed the due process committee's decision recommending that Dr. Guillot discharge Martin.
 
 
 8
 Believing that the trustees and Dr. Guillot had not yet afforded him the "due process" and "equal protection" which had been mandated by this court and ordered by the district court, Mr. Martin filed a motion for an order holding the defendants in continued and persistent contempt of the court's previous orders and requiring them, in order to purge themselves of contempt, to reinstate Martin with back pay through December 3, 1987, and reimburse his attorney's fees. Among the grounds upon which Martin based his motion was that the defendants' refusal to hear or consider the testimony of Professor Jim Davis and the testimony of Martin's subsequent employers denied him equal protection of the laws and due process of law, both procedurally and substantively. As an alternative to this motion, Martin moved for an order which would afford him due process of law and equal protection of the laws through judicial consideration of the deposition of Professor Jim Davis and the offer of proof of the testimony which would have been elicited from Martin's subsequent employers.
 
 
 9
 On January 15, 1988, the court granted plaintiff's motion for an order holding defendants in continued contempt to the limited extent of requiring them to pay plaintiff an amount approximately equal to back pay through December 3, 1987. Upon payment of the sanction, defendants would be purged of their contempt of court. The district judge also granted Martin an award of attorneys' fees and taxed the costs against the defendants. However, Martin's motion requiring defendants to reinstate him was denied. In its memorandum opinion accompanying its order, the court found that the president and trustees now had afforded Martin both the "due process" and the "equal protection" guaranteed him by the Fourteenth Amendment and the UNA Faculty Handbook. On February 2, 1988, the court ordered that the plaintiff have and recover of defendants, separately and severally, the sum of $14,500.00. This sum approximately represented back pay less the money earned by Martin in subsequent employment through December 3, 1987. The district judge clearly stated that the payment was not meant as compensation to Martin, but rather as a sanction for the defendants' having failed to obey the prior orders of the court. In a subsequent order, the court deemed it appropriate to await the outcome of this appeal before ruling on motions made by Martin's attorneys for fees.
 
 APPEAL
 
 10
 In challenging the district court's denial of his reinstatement, appellant argues that he still suffers from a denial of his rights to due process of law and equal protection of the laws. He asserts that the court erroneously decided that it was within the trustees' discretion whether to consider supplementary evidence and testimony that allegedly support his equal protection and substantive due process claims. Appellant further argues that the court also erred in itself failing to hear and consider those additional materials and decide the entire case de novo.
 
 
 11
 As a result of these alleged errors, appellant states that his equal protection claim was never genuinely considered, despite the district court's allowing it to be asserted in a post-mandate amended complaint and ordering the taking of the deposition of Jim Davis.[3] Martin insists that the trustees' refusal to consider the Davis deposition denied him effective rebuttal and thus constituted a violation of his right to procedural and substantive due process. Appellant also asserts that he was denied due process because testimony of his subsequent employers concerning his ability to work was not heard and considered by either the trustees or the district court. This testimony supposedly would help show that the committee's recommendation and president's decision to terminate appellant was not supported by substantial evidence. Ultimately, appellant maintains that he was denied substantive due process in a broader sense as well in that the board had a predilection to affirmance throughout the proceedings. Within this broader context, Martin again maintains that it was error for the district court to allow the board, which the court had held in contempt for failing to afford him meaningful review in the first instance, to choose not to hear and consider supplementary materials that went to supposedly vital issues. Appellant persists that, due to the board's alleged bias and court's alleged error, he did not receive a fair opportunity to prevail at any point in the administrative proceedings.
 
 Analysis
 
 12
 In this circuit, a federal court reviewing a decision of a public educational institution to discharge an employee employs a two-tier level of inquiry. We examine whether the procedures followed by school authorities comported with due process requirements, and if so, whether the action taken is supported by substantial evidence. Holley v. Seminole County School Dist. 755 F.2d 1492, 1496 (11th Cir.1985); Viverette v. Lurleen B. Wallace State Junior College, 587 F.2d 191, 193 (5th Cir.1979); Ferguson v. Thomas, 430 F.2d 852, 858 (5th Cir.1970).[4] See also Hatcher v. Board of Public Educ. and Orphanage for Bibb County, 809 F.2d 1546, 1552 (11th Cir.1987).
 
 
 13
 In Holley, we restated the minimum procedural due process requirements that were originally set out by the former Fifth Circuit for cases such as this. The discharged employee must be given (1) notice of the reasons for dismissal, (2) notice of the names of adverse witnesses and the nature of their testimony; (3) a meaningful opportunity to be heard; and (4) the right to be heard by a tribunal which possesses some academic expertise and an apparent impartiality toward the charges leveled against the employee. Holley, 755 F.2d at 1497; Ferguson, 430 F.2d at 856. Although some coercion from the federal courts was needed, appellees eventually did afford Martin procedural due process in conformity with UNA's procedures. Martin received a hearing before a due process committee which recommended that his employment be terminated. After a review, the president accepted the committee's recommendation. The board of trustees at last fulfilled its role by reviewing the prior proceedings and conducting a hearing at which counsel for Martin and UNA presented their respective arguments. After the hearing, the trustees deliberated and decided to affirm the decision of the president. Such procedures enabled him meaningfully to contest his discharge and, at the very least, meet the minimum constitutional standards for procedural due process.[5]
 
 
 14
 Next, we address the second inquiry regarding whether the trustees' decision was supported by substantial evidence. As we stated in Holley, "[w]e do not review the evidence de novo to see if in our judgment there was 'cause' ... [to terminate employment]; rather, the purpose of this limited substantive review is to meet the requirement of due process, that there be a rational basis for the deprivation of an individual's property." Holley, 755 F.2d at 1499, citing Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970). Viverette, 587 F.2d at 193 ("... federal courts are limited in the scope of their review to the procedures employed by and the evidence before an educational review board"; "de novo hearings in district courts on such matters are not favored.")
 
 
 15
 We determine that the board of trustees' finding that the due process committee's recommendation and president's decision to discharge appellant are not clearly erroneous is supported by substantial evidence. Martin's drug dependency caused multiple absences from work, concerning which he reported false excuses. While at work, he often was not effective. Shortly before Martin's 28-day stay in a rehabilitation center, Dr. Guillot met with Martin and observed him in an incoherent state characterized by bleary eyes, a staggering walk, and slurred speech. University administrators reasonably could insist that the Director of Student Activities be an effective administrator and a positive role model for the students with whom he comes into daily contact. Such a concern bears a rational relation to a legitimate purpose of maintaining sound university administration.
 
 
 16
 We find no merit in Martin's allegation that he was subject to unfair treatment in violation of his right to equal protection of the laws in that he was discharged while another employee of UNA, who suffered from alcohol abuse and sought treatment at a rehabilitation center, was not discharged or reprimanded in any way. Although UNA may not treat similarly situated individuals differently in an arbitrary manner, it is the proper entity to make decisions regarding its personnel. Here, the due process committee, president, and board of trustees could rationally conclude that factual differences existed between the two situations that warranted different treatments.
 
 CROSS-APPEAL
 
 17
 Dr. Guillot and the trustees challenge the district court orders holding them in continued contempt and imposing a sanction of $14,500.00. While we share the district court's disdain of defendants' conduct in initially failing to comply with court orders to afford Mr. Martin due process, we reverse the court's orders holding defendants in continued contempt and requiring payment of a sanction to purge themselves of the court's contempt.
 
 
 18
 Initially, we must determine whether the nature of the continued contempt is civil or criminal. It is well-settled that sanctions in civil contempt proceedings may be employed to coerce a contemnor into compliance with the court's order, and/or to compensate a complainant for losses sustained. Sizzler Family Steak Houses v. Western Sizzlin Steak House, Inc., 793 F.2d 1529, 1534 (11th Cir.1986); Rickard v. Auto Publisher, Inc., 735 F.2d 450, 458 (11th Cir.1984). In contrast, if a court seeks to vindicate its authority by punishing a contemnor, then contempt is criminal in nature. Combs v. Ryan's Coal Co., Inc., 785 F.2d 970, 981 (11th Cir.1986), cert. denied, 479 U.S. 853, 107 S.Ct. 187, 93 L.Ed.2d 120 (1986); Wolfe v. Coleman, 681 F.2d 1302, 1306 (11th Cir.1982).
 
 
 19
 In this case, the sanction was not imposed either to coerce or compensate and therefore is not a civil contempt sanction. The defendants had already complied with the court orders and afforded Martin due process; there remained nothing to coerce them to do. The continued contempt could be construed as being compensatory in character because the sanction, approximately equal to back pay, was to be paid to the appellant rather than to the court. However, in its order specifying the amount of the sanction to be imposed, the district court explicitly stated its "object was and is to sanction defendants rather than to compensate Martin." Because the sanction levied by the district court was clearly designed predominately to punish defendants for their initial failing to comply with court orders, it is a criminal contempt sanction.[6]
 
 
 20
 A criminal contempt sanction must be issued in accordance with the procedures set out in Fed.R.Crim.P. 42.[7] Appellees' initial non-compliance was not direct contempt committed in the actual presence of the court. See United States v. Baldwin, 770 F.2d 1550 (11th Cir.1985), cert. denied, 475 U.S. 1120, 106 S.Ct. 1636, 90 L.Ed.2d 182 (1986). Therefore, they could not be punished summarily pursuant to Rule 42(a). The procedures required by Rule 42(b) were not followed; we reverse the orders holding defendants in continued contempt and imposing a sanction.
 
 
 21
 In light of our decisions above, appellant is not entitled to attorneys' fees for any action pursued after the board of trustees afforded him due process on December 3, 1987.
 
 
 22
 AFFIRMED in part, REVERSED in part.
 
 
 
 *
 Honorable C. Clyde Atkins, Senior U.S. District Judge for the Southern District of Florida, sitting by designation
 
 
 [1]
 Pursuant to the district court's instructions, Mr. Martin properly moved the court for an award of costs, including attorneys' fees. He also moved for an amendment to the court's final order of April 30, 1984 to require the payment of plaintiff's salary, not merely through the date of the due process committee's hearing, but through the date of the appellate ruling by the board of trustees as well. In an order entered on June 26, 1984, the court awarded the amount of attorneys' fees and expenses that plaintiff requested. Regarding the request for compensation, the court ruled that the trustees, sued only in their official capacities, were immune from money judgments except for attorneys' fees and expenses. However, the court amended its order of April 30th to require Dr. Guillot, sued in his personal as well as in his official capacity, to compensate Mr. Martin with backpay through the date of the trustees' decision. The court remarked that it understood that UNA would not leave Dr. Guillot to make the payments personally, but would itself meet the obligation
 In September, 1984, Dr. Guillot notified the district court that he had complied with the court orders. He submitted copies of the checks written by UNA as payment of attorneys' fees and expenses and of backpay through the date of the Trustees' decision, June 11, 1984.
 
 
 [2]
 Among the evidence heard by the due process committee was the testimony of the Dean of Arts and Sciences regarding Jim Davis, a UNA faculty member who had been treated for alcohol abuse, yet was retained by UNA without sanction. The supplementary evidence and testimony that the trustees were given the option to consider included the deposition of Professor Davis taken in 1987 and the testimonies of appellant's subsequent employers
 
 
 [3]
 On June 10, 1987, the district judge granted plaintiff's motion to reconsider an earlier order that had denied a motion to depose Jim Davis
 
 
 [4]
 The Eleventh Circuit, in the en banc decision Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981), adopted as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981
 
 
 [5]
 We find no error in the district court's permitting the trustees the option, and the trustees' choosing the option, of not hearing and considering supplementary materials. It was properly within the trustees' discretion whether to limit their review to materials previously considered by the committee and president, or to consider additional materials as well. We also find no error in the district court's considering only the transcript of the due process committee's hearing, and not the supplementary materials, in reaching its conclusion that the committee's recommendation and president's decision were not clearly erroneous, and that, a fortiori, the board's decision was supported by substantial evidence
 
 
 [6]
 In United States v. Nunez, 801 F.2d 1260, 1263 (11th Cir.1986), this court noted:
 [T]he ultimate test for determining the civil or criminal character of a contempt order is 'the apparent purpose of the trial court in issuing the contempt judgment,' a punitive purpose or one 'designed to vindicate the authority of the court' establishing the criminal nature of the order, while a coercive or remedial purpose characterizes a civil contempt.
 Thyssen, Inc. v. S/S Chuen On, 693 F.2d 1171, 1173-74 (5th Cir.1982) (quoting) Smith v. Sullivan, 611 F.2d 1050, 1053 (5th Cir.1980)). See also, United States v. Roberts, 858 F.2d 698, 700 (11th Cir.1988).
 
 
 [7]
 Rule 42 of the Federal Rules of Criminal Procedure reads as follows:
 Rule 42. Criminal Contempt.
 (a) Summary Disposition. A criminal contempt may be punished summarily if the judge certifies that he saw or heard the conduct constituting the contempt and that it was committed in the actual presence of the court. The order of contempt shall recite the facts and shall be signed by the judge and entered of record.
 (b) Disposition Upon Notice and Hearing. A criminal contempt except as provided in subdivision (a) of this rule shall be prosecuted on notice. The notice shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the criminal contempt charged and describe as such. The notice shall be given orally by the judge in open court in the presence of the defendant or, on application of the United States attorney or of an attorney appointed by the court for that purpose, by an order to show cause or an order of arrest. The defendant is entitled to a trial by jury in any case in which an act of Congress so provides. He is entitled to admission to bail as provided in these rules. If the contempt charged involves disrespect to or criticism of a judge, that judge is disqualified from presiding at the trial or hearing except with the defendant's consent. Upon a verdict or finding of guilt the court shall enter an order fixing the punishment.