**In re SLK ASSOCIATES, INC. d/b/a Bromley's, Debtor.**

**SLK ASSOCIATES, INC. d/b/a Bromley's, Plaintiff,**

**v.**

**MIAMI MONEY STORE, INC., George Kovacs and Jay Weinberg, Defendants.**

Bankruptcy No. 93–10287–BKC–AJC. Adv. No. 93–0070C–BKC–AJC.

United States Bankruptcy Court, S.D. Florida.

April 22, 1994.

Stewart P. Chambers, Benson, Moyle & Chambers, Ft. Lauderdale, FL, for debtor/plaintiff.

Steven R. Brownstein, Semet, Lickstein, et al., P.A. Coral Gables, FL, for Miami Money Store, Inc.

## ORDER GRANTING MOTION FOR CONTEMPT

A. JAY CRISTOL, Chief Judge.

THIS MATTER having come before the Court on October 14, 1993 for final hearing on the Motion for Contempt brought by

Plaintiff, SLK ASSOCIATES, INC., d/b/a BROMLEY'S, against Defendants, MIAMI MONEY STORE, INC., GEORGE KOVACS and JAY WEINBERG, seeking an Order of contempt against Defendants for wilful and intentional violation of this Court's Temporary Restraining Order (the "T.R.O.") issued January 26, 1993, and the Court having taken testimony on four (4) separate occasions, having reviewed the evidence, received Post Trial Memoranda, heard argument of counsel, and being further advised in the premises, the Court hereby finds as follows:

## BACKGROUND

On January 26, 1993, SLK filed a Verified Adversary Complaint together with a Verified Emergency Motion for *Ex–Parte* Temporary Restraining Order. The substance of the Complaint and Motion was that SLK allegedly pledged items of jewelry as collateral to MIAMI MONEY STORE in exchange for capital. The complaint alleged that these pledges were structured as buysell arrangements wherein:

(a) SLK would pledge jewelry to MIAMI MONEY STORE;

(b) MIAMI MONEY STORE's purchase invoice would reflect a purchase price at substantially less value than the value of the jewelry;

(c) MIAMI MONEY STORE would purportedly hold the jewelry for a period of time with SLK having the exclusive right to repurchase same; and

(d) The repurchase price would be substantially greater than the sales price.

SLK asserts that the difference between the sale price and the repurchase price constituted usury under Fla.Stat. 687.02.

The Complaint further alleged that MIAMI MONEY STORE was holding pledged jewelry of SLK with a fair market value in excess of $1,200,000.00. The Complaint identified certain items of jewelry such as "two (2) unique necklaces worth approximately $200,000.00 each, unique diamond earrings, unique Rolex watches, unique precious stones, unique unset diamonds and other unique fine jewelry".

According to the Complaint, the jewelry was being held in at least two (2) safety deposit boxes located at Universal National Bank.

Plaintiff also alleged that MIAMI MONEY STORE had certain designated records which substantiated the loan transactions and proved the usury. Plaintiff alleged that these records were essential to prove its case.

The primary and most important record was alleged to be a single sheet of paper which was kept in the office of the MIAMI MONEY STORE on top of a "Rolex" pad on the desk of GEORGE KOVACS.

The rationale for the T.R.O. was clear. Plaintiff feared that upon normal service of process, the Defendants, who it was alleged were already engaged in violating the usury law, would destroy this document and impede Plaintiff's ability to prove its case.

Through the T.R.O., it was contemplated that the U.S. Marshal would seize this document which would be immediately photocopied and returned. Then, with minimal inconvenience to all parties, the crucial piece of documentary evidence would either prove Plaintiff's case or exonerate Defendants. It should be noted that this is a civil matter, not a criminal investigation or prosecution. Yet the response of Defendants was a refusal to cooperate and immediate communication with one of the most highly regarded practitioners of criminal law in the United States.

Defendants GEORGE KOVACS ("KOVACS") and JAY WEINBERG ("WEINBERG") were joined as principals of MIAMI MONEY STORE and allegedly participated in these transactions as well as allegedly having possession of certain records and jewelry.

The Complaint and Motion were signed and verified by ALAN H. STEIN ("STEIN"), Plaintiff's President.

Based on the Verified Documents, the Court entered a Temporary Restraining Order, *ex-parte* pursuant to Rule 7065.

The Temporary Restraining Order contained Findings of Fact and Conclusions of Law mirroring the allegations of the Complaint and Motion including:

(a) A Temporary Restraining Order is mandated by the facts of this case because Defendants will cause immediate and irreparable injury, loss, or damage to the Debtor, the Debtor's estate and the Debtor's unsecured creditors by transferring property of the Debtor's estate, preventing the Debtor from marshalling its assets for the benefit of the estate, and destroying records which will prove allegations entitling the Debtor to recover substantial damages from the Defendants. . . .

(b) Debtor has no adequate remedy at law.

(c) The granting of an injunction will cause no harm or inconvenience to the Defendants.

The Court, then granted relief, including:

A. The Defendants, their officers, agents, servants, employees, attorneys, and those persons in active concert with them, are prohibited from selling, hypothecating, pledging, encumbering, transferring, removing, concealing, assigning, or otherwise disposing of the jewelry pledged by the Debtor;

B. The Defendants are required to relinquish the records and jewelry to the Court, United States Marshal, the Trustee or the undersigned to be held in trust pending full and final resolution of this matter;

C. The Defendants are required to relinquish to the Court, the United States Marshal, the Trustee or the undersigned the safety deposit box keys for the safety deposit boxes at Universal National Bank where Defendants keep Debtor's collateral;

D. The United States Marshal shall serve a copy of the Temporary Restraining Order on Defendants at the Store located at 56 N.E. 1st Street, Miami, Florida, and Universal National Bank at 117 N.E. 1st Avenue, Miami, Florida;

E. The United States Marshal shall seize all records held by Defendants related to the transactions between Defendants and the Debtor, and instructing the Marshal to turn all such records over to the Trustee or undersigned counsel;

F. The United States Marshal shall be given access to the safety deposit boxes at Universal National Bank, and shall seize all items of jewelry contained therein, and to hold same pending adjudication of Debtor's allegations herein; or in the alternative to seal said safety deposit boxes and prohibit any person from obtaining access to same pending final adjudication of Debtor's allegations herein;

G. The Defendants shall file with the Court, the United States Marshal, the United States Trustee, and the undersigned counsel within 24 hours of service of the Temporary Restraining Order, an inventory, under oath, of all items of jewelry held as collateral by the Defendants for the loans made to the Debtor;

This relief was granted without the posting of a bond as it appeared that no harm would result from the T.R.O. and at worst a minor inconvenience might occur, without possibility of any monetary loss to Defendants and with ability to modify the Order as necessary to allow continued and uninterrupted operation of Defendants business.

But for a major and material discrepancy between the testimony of STEPHEN KAVKY ("KAVKY") of BROMLEY'S and Defendant KOVACS relating to the events that occurred prior to the U.S. Marshal entering the premises of MIAMI MONEY STORE, the events relating to the execution of the Temporary Restraining Order are basically not in dispute.

KAVKY testified that he entered MIAMI MONEY STORE prior to the Marshal. After entering, he was shown the critical piece of paper identifying 25 outstanding "pledge" transactions and interest that was due on each of them. His testimony indicates that this particular document was actually placed in his hand. KAVKY further asserted that he inquired of KOVACS the whereabouts of 25 invoices reflecting these outstanding transactions, which invoices were kept in a separate binder. KAVKY then testified that KOVACS acknowledged the existence of the invoices but informed him that they were removed from the premises. According to KAVKY, when the U.S. Marshal entered the premises, KOVACS took the piece of paper from his hand and put it in his pocket. KOVACS testified that none of the above took place. Neither party has produced evidence of these invoices.

Neither KAVKY nor KOVACS are particularly credible witnesses. On this dispute, however, the Court believes KAVKY on the issue of the existence of a piece of paper on top of the Rolex pad and that KOVACS put same in his pocket. If KOVACS had wished to establish that he had nothing in his pocket, he could have easily demonstrated this at that time.

## FACTS NOT IN DISPUTE

The following facts are not in dispute. On or about 3:00 p.m. on January 26, 1993 representatives of the U.S. Marshal's Office, various individuals from the law firm representing the Plaintiff and KAVKY entered the premises of MIAMI MONEY STORE. The Temporary Restraining Order was served upon KOVACS and the MIAMI MONEY STORE. Shortly thereafter, WEINBERG, the President of the MIAMI MONEY STORE appeared at the store and was delivered a copy of the Temporary Restraining Order. Either KOVACS or WEINBERG then asked the U.S. Marshal if they could consult legal counsel. The Marshal acknowledged this was not an order to be executed with force. Defendants immediately contacted counsel. After receiving a fax copy of the Temporary Restraining Order, counsel advised the Defendants that, based upon the Findings of Fact and Conclusions of Law recited in the Temporary Restraining Order:

(a) Compliance may violate 5th Amendment rights;

(b) Bankruptcy counsel was necessary; and

(c) Defendants should not interfere with any search the Marshal may wish to conduct.

At this point the Plaintiff voluntarily gave up almost all of the potential benefits of the Temporary Restraining Order. Plaintiff's counsel was there. The Marshal was there. Allegedly the critical piece of paper was in KOVACS' pocket. MR. KOVACS had just been instructed by his lawyer that he should "not interfere with *any* search the Marshal may wish to conduct." The Court was a telephone call away. Instead of asking the Marshal to search KOVACS' pocket or calling the Court to request the Court order such search, Plaintiff and its counsel stood

around for a few hours and ultimately left with their primary mission not accomplished.

In any event, as a result of the conversation and instructions of counsel, Defendants did not comply immediately with the Temporary Restraining Order. Instead, KOVACS offered to seal the premises and return to the premises after Defendants had an opportunity to consult with bankruptcy counsel. Subsequent opening of the safe deposit boxes did not locate any of the jewelry alleged to be therein.

## DISCUSSION

■ Early in this case, by Order dated March 12, 1993, the Court set out the elements Plaintiff must prove to prevail and the standard of proof those elements must meet. To prevail on its Motion for Contempt, Plaintiff must prove by clear and convincing evidence:

(1) That · there was a violation of the Court's Order. *CFTC v. Wellington Precious Metals, Inc.,* 950 F.2d 1525 (11th Cir. 1992);

(2) That the court Order was valid and lawful as well as clear, definite and unambiguous. *Jordan v. Wilson,* 851 F.2d 1290 (11th Cir.1988); and

(3) That those matters subject to the Order actually exist. *U.S. v. Rizzo,* 539 F.2d 458 (5th Cir.1976).

### 1. *Violation of Court Order*

■ Defendants argue that they adequately complied with the Court's Temporary Restraining Order by filing the following day the affidavit required under Paragraph "G" of the Temporary Restraining Order and, by delivering to the Court two days later some of the transactional documents in their possession relating to SLK, along with the keys to the safety deposit boxes referred to in the Complaint.

Determining whether there was a violation of the Court's Order first requires an understanding of the Bankruptcy Court's injunctive power under Bankruptcy Rule 7065 which is essentially a codification of Federal Rule of Civil Procedure § 65. Pursuant to Rule 7065(b), "A temporary restraining order

may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. . . ."

Rule 7065 allows courts to issue *ex parte* restraining orders to prevent the adverse party from confounding the objective of the Order. In fulfillment of those ends it is imperative for a party that has been served the order to comply in a manner which reflects the immediate nature of the Order.

In the instant case, notice was not required because it was feared that such notice would cause Defendants to take the very actions which Plaintiff sought to prevent by the filing of its motion in the first place; that is, that the Defendants, with notice, would transfer and hide the jewelry, and destroy the records of usurious loan transactions, all causing immediate and irreparable injury, loss, or damage to the Debtor, Debtor's estate, and Debtor's unsecured creditors.

The Court finds that the protection promised by Rule 7065 was undermined by Defendants' lack of compliance and delayed compliance with the Court's Order. When the Marshal entered the Defendants' business premises at approximately 3:00 p.m. on January 26, 1993, he identified himself to KOVACS and stated the purpose of his visit. Furthermore, the Marshal explained the Temporary Restraining Order to both KOVACS and WEINBERG and had them read relevant parts. When asked if they would comply, KOVACS stated that he wanted to consult with his counsel before he would comply with the Court Order. This is not compliance, nor did Defendants comply at that time and place. The Marshal waited approximately *two hours* without any cooperation from Defendants. Accordingly, the U.S. Marshal concluded, and noted on his Return of Process, that Defendants' inaction

was a refusal to comply with the Temporary Restraining Order. The Marshal left the premises with only four pieces of paper. None of the records, keys or collateral mentioned in the Order were turned over. It was only during the following two days that the Defendants embarked on a campaign of piecemeal compliance. Defendants' after-the-fact compliance with the Court's order is wholly inadequate and defeated the purpose of the T.R.O.

Defendants' inaction on January 26 is further exacerbated by the fact that Defendants were indeed in a position to immediately comply with the Order. KOVACS admitted that at the time of service of the Temporary Restraining Order he had in his possession invoices issued by the MIAMI MONEY STORE or by a dissolved company named "G.K. MANAGEMENT," dated from 1990 to the present, related to the transactions between the Plaintiff and these Defendants. In addition, KOVACS admitted possession of records pertinent to the MIAMI MONEY STORE'S transactions with Plaintiff at the time the U.S. Marshal served the Order.[1] Nevertheless, these records were not relinquished to the Marshal upon service of the Order. Furthermore, KOVACS concedes that Defendants refused to turn over the keys to the safety deposit boxes when requested to do so by the Marshal. WEINBERG substantiates Defendants' failure to comply with the Court's Temporary Restraining Order by admitting during pre-trial discovery that Defendants did not comply with the Marshal's request to turn over all records reflecting Plaintiff's transactions with the MIAMI MONEY STORE.

Defendants' actions after obtaining counsel are also suspect. At trial Defendants claimed that they turned over all documents relating to deals between Plaintiff and MIAMI MONEY STORE. Plaintiff, however, was able to produce 27 additional receipts which represented prior transactions between the MIAMI MONEY STORE and SLK.[2] Defendants never produced their

1. Transcript of Testimony of George Kovacs at Continued Hearing, dated March 25, 1993, page 54, line 25, and page 56, lines 1–3, 20–23; *see also*, published deposition testimony of Kovacs, Deposition Transcript pages 51 and 54; and February 24, 1993 hearing transcript pages 42–43.

2. These 27 receipts should not be confused with the 25 invoices reflecting outstanding loans between SLK and MIAMI MONEY STORE. Neither party was able to produce invoices or receipts pertaining to the 25 alleged transactions.

copies of these receipts even though the transactions clearly took place.

### 2. Court Order Valid and Lawful/Clear and Unambiguous

■ Defendants argue that their failure to properly comply with the order was excused due to the ambiguous and indefinite nature of the document. Specifically, Defendants claim that their untimely compliance was due to the Temporary Restraining Order's failure to designate time parameters for the performance of the directed acts.

It is well settled law that an order of the court must be complied with promptly. *Maness v. Meyers*, 419 U.S. 449, 95 S.Ct. 584, 42 L.Ed.2d 574 (1975); *Carlucci v. Piper*, 775 F.2d 1440, 1448 (11th Cir.1985). Furthermore, the Marshal entered the premises with various members of Plaintiff's counsel. The Order was explained to and read by Defendants. Even a cursory reading would have placed Defendants on notice of the urgent and immediate nature of the Order. Clearly, a reasonable person in Defendants situation would have come to the undeniable conclusion that the Temporary Restraining Order required immediate compliance.

Drawing from clear legislative intent underlying Rule 7065 it is clear that, in the context of this *ex parte* Temporary Restraining Order, "promptly" should be interpreted to mean immediately.

■ Defendants contend that the Temporary Restraining Order was not valid and lawful since it was issued solely upon the two pleadings verified by ALAN STEIN. Defendants argue that although STEIN was President of SLK, he had no first hand knowledge of the allegations which he swore to as being true and correct. As such, any order emanating from STEIN's pleadings cannot itself be considered valid or lawful.

The Court is not persuaded by this argument. No evidence or testimony has been presented to contradict STEIN's sworn affidavit. On the contrary, STEIN's affidavit sufficiently represents personal knowledge of the underlying transactions and the collateralizing of the jewelry.

It is further alleged by the Defendants that the Order authorized the Marshal to seize "all records held by Defendants related to the transactions between Defendants and the Debtor."

Bankruptcy Rule 7065(d) clearly states, "Every order granting an injunction and every restraining order ... is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, *and upon those persons in active concert or participation with them* who receive actual notice of the order by personal service or otherwise." (emphasis provided) GEORGE KOVACS is not only a named Defendant to this action but was also 100% owner and operator of G.K. MANAGEMENT, INC. As such, G.K. MANAGEMENT's records fall within the "active concert or participation" requirement of Rule 7065 and clearly should have been relinquished to the Marshal.

Defendants' attack on the validity and definiteness of the Temporary Restraining Order are unfounded. The Order was adequately drafted in compliance with Rule 7065.[3] No less than four (4) pages were dedicated to establishing the Court's finding of facts regarding the underlying motion. Furthermore, the Order specifically and repeatedly explained how the threat of immediate injury, loss or damage to the Debtor justified the *ex parte* restraining order. In addition, the Order reasonably described the items to be seized. Paragraphs "B" and "E" both require the Defendants to relinquish all records relating to transactions between Debtor and Defendants. Paragraph "C" requires the Defendants to relinquish the safety deposit box keys.

### 3. Existence of Items Subject to Order

■ This Court finds that Defendants violated a clear and valid Court Order. The

---

**3.** Bankruptcy Rule 7065(d) and Federal Rule of Civil Procedure 65(d) state: "Every order granting an injunction and every restraining order shall set forth the reasons for its issuance; shall be specific in terms; shall describe in reasonable detail, and not by reference to the complaint or other document, the act or acts sought to be restrained; and is binding only upon the parties to the action, their officers, agents, servants, employees, and attorneys, and upon those persons in active concert or participation with them who receive actual notice of the order by personal service or otherwise."

only remaining question is whether Plaintiff proved by clear and convincing evidence that the items subject to the Order actually exist.

There is no question that safety deposit box keys and some records regarding transactions between the parties exist. Proof of the existence of the safety deposit box keys came when the Defendants eventually turned them over two days after they were originally to be relinquished. In addition, Plaintiff has demonstrated and Defendants acknowledge that over the course of several years, MIAMI MONEY STORE and SLK/BROMLEY'S executed numerous trades of jewelry. While each trade was evidenced by an invoice, it appears that after a period of time invoices were discarded. Defendants acknowledge that they have not turned over any copies (or originals) of the 27 trade invoices Plaintiff was able to produce. The existence of these items alone, along with Defendants' failure to produce them, would be sufficient to hold Defendants in contempt. It is interesting to note that none of the alleged jewelry has been found.

More important is the existence of the sheet of "Rolex" paper. The court specifically notes the testimony of KAVKY regarding the "Rolex" business record which, according to KAVKY's testimony, contained a listing of some alleged twenty-five (25) outstanding loan transactions between the Plaintiff and the MIAMI MONEY STORE along with interest calculations relative to each transaction. KAVKY testified that upon entering the MIAMI MONEY STORE minutes before the Marshal, he was initially able to take possession of the "Rolex" business record but that KOVACS took back and pocketed the record from KAVKY when the Marshal entered the premises. The top sheet of the "Rolex" pad has not been produced to this date.

The Court notes the deposition testimony of KOVACS, made part of the evidentiary record before the Court, wherein KOVACS testified that the MIAMI MONEY STORE did in fact keep a "Rolex" pad on the front of KOVACS' desk and that this pad was utilized to note, on a daily basis, the gross profits of the MIAMI MONEY STORE. KOVACS further testified that the MIAMI MONEY STORE has in fact made profits from the Plaintiff and that these profits had been duly

noted on the "Rolex" pad. As such, this pad would clearly be an item subject to the Order. Yet, at trial, Defendants offered a flat denial as to the existence of the top sheet of the "Rolex" pad at the time the Marshal was on the premises of the MIAMI MONEY STORE. The Court finds KOVACS' testimony regarding the non-existence of the sheet of "Rolex" paper unbelievable. The Court finds that Plaintiff, through KOVACS' and KAVKY's testimony, has proven by clear and convincing evidence that the "Rolex" sheet did in fact exist, although the Court is not willing to find what constituted the contents of this writing.

Whatever information the "Rolex" business record might have contained is now forever lost. The Defendants have not produced it. Whether damning or exculpatory, Defendants have secreted it or destroyed it in direct violation and contempt of this Court's Order. Regardless, KOVACS' refusal to turn the "Rolex" business record over to the U.S. Marshal is the most significant ground for the Court's finding of contempt against Defendants.

### CONCLUSION

The Court has the inherent authority to punish and sanction those who deliberately, willfully and contumaciously disregard the judicial process. *Citronelle–Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297 (11th Cir.1991); *Carlucci v. Piper Aircraft Corp.*, 775 F.2d 1440, 1446 (11th Cir.1985). Bankruptcy Courts have inherent ·civil contempt power to enforce compliance with their lawful judicial orders, and no specific statute is required to invest court with civil contempt power. Orders holding non-compliant parties in civil contempt both coerce the contemnor into compliance with a court's Order and compensate a complainant for losses sustained as a result of the contemnor's disobedience. *Martin v. Guillot*, 875 F.2d 839 (11th Cir.1989).

The Court finds that Defendants' wilful conduct clearly violated both the letter and spirit of this court's Temporary Restraining Order. Production of the pocketed record would have decided this case one way of the other at once. Behavior of this sort shall not

be tolerated lest we allow the obstruction and frustration of judicial authority. As such, the Court finds Defendants, MIAMI MONEY STORE, INC., GEORGE KOVACS and JAY WEINBERG in contempt. Accordingly, it is

**ORDERED that:**

1. Debtor's Motion for Contempt and Sanctions for Violation of the Temporary Restraining Order, as to Miami Money Store, George Kovacs, its agent and Jay Weinberg, as the Chief Executive of the Money Store and boss and superior of Kovacs, is GRANTED.

2. A final evidentiary hearing to establish the damages the Debtor has suffered as a result of the violation and appropriate sanctions is scheduled for May 16, 1994 calendar call at 9:30 a.m., at 51 S.W. 1st Avenue, Federal Building, Courtroom 1410, Miami, Florida. One hour has been allocated, thirty minutes for each side.

DONE and ORDERED.