[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 14-10262
_____

D.C. Docket No. 1:13-cv-01609-TWT

JOY LASKAR, Ph.D.,

Plaintiff - Appellant,

versus

G.P. "BUD" PETERSON,
individually and in his official capacity as President of the
Georgia Institute of Technology, a Unit of the University
System of Georgia, et al.,

Defendants - Appellees.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 13, 2014)

Before WILSON and ROSENBAUM, Circuit Judges, and HUCK,* District Judge.

WILSON, Circuit Judge:

This is an appeal by a former tenured university professor who alleges that his termination failed to comport with procedural due process.  Joy Laskar, Ph.D., who was a professor at the Georgia Institute of Technology (Georgia Tech), appeals from the district court's order dismissing pursuant to Federal Rule of Civil Procedure 12(b)(6) his complaint brought under 42 U.S.C. § 1983 against Georgia Tech President G.P. "Bud" Peterson, Chancellor Hank M. Huckaby, and the individual members of the Board of Regents of the University System of Georgia (collectively, Appellees).[1]  Although Laskar was afforded a pre-termination hearing before a Faculty Hearing Committee that submitted its recommendation to Peterson, Laskar contends that the lack of a requirement that he have an audience with Peterson or that Peterson rely on the findings of the Committee before making a final decision deprived him of a "meaningful opportunity to be heard."  *See Holley v. Seminole Cnty. Sch. Dist.*, 755 F.2d 1492, 1497 (11th Cir. 1985).  Because we find that Laskar fails to allege a plausible claim that he was denied procedural due process, we affirm the dismissal of his complaint.

---

* Honorable Paul C. Huck, Senior United States District Judge for the Southern District of Florida, sitting by designation.

[1] Peterson and Huckaby were sued individually and in their official capacities as the President of Georgia Tech and the Chancellor of the Board of Regents, respectively.  The individual members of the Board of Regents were sued both in their individual and official capacities.

## I.  Background

We begin with a recitation of the relevant facts, which we take from both Laskar's complaint and the documents attached to Appellees' motion to dismiss.

### A.

Laskar, an electrical engineer specializing in communication technology, was a tenured professor at Georgia Tech and former director of the Georgia Electronic Design Center (GEDC).  Each year during his employment with Georgia Tech, Laskar entered into a written contract detailing the terms of his employment.  By its terms, the contract was subject to the Rules and Regulations of Georgia Tech and the Bylaws and Policies of the Board of Regents.

On May 17, 2010, Peterson, the President of Georgia Tech, sent a letter to Laskar informing him that, effective immediately, he was suspended without pay.[2] The letter explained: "In reviewing the recent cost overruns within the [GEDC], the Institute's Department of Internal Auditing discovered what they believe to be substantial evidence of malfeasance on your part including the misappropriation of Institute resources for the benefit of a company . . . of which you are part owner." Shortly thereafter, Laskar received a second letter notifying him that Georgia Tech intended to institute dismissal proceedings against him.

---

[2] Laskar's suspension without pay was the subject of a separate lawsuit initiated by Laskar against the Board of Regents.  That case was settled, and Laskar continued to receive his salary during his suspension.

The Georgia Tech Faculty Handbook and the Board of Regents Policy Manual set forth the pre-termination procedures for tenured faculty. The preliminary procedures require: (1) a discussion between the faculty member and appropriate administrative officers looking toward a mutual settlement; (2) an informal inquiry by the Faculty Status and Grievance Committee (FSGC), which may advise the President that dismissal proceedings should take place (though the FSGC's advisory opinion is not binding on the President); and (3) a letter of warning to the faculty member notifying him that he is about to be terminated, he can obtain a formal statement of the charges against him, and he can request a formal hearing on the charges before a Faculty Hearing Committee.

Pursuant to the required procedures, Laskar met with a faculty member to discuss mutual settlement. When a settlement was not reached, the matter was referred to the FSGC for its informal inquiry. On July 9, 2010, the preliminary procedures drew to a close when Peterson sent Laskar a letter, informing him that the FSGC had voted in favor of dismissal proceedings and that Laskar was, upon request, entitled to a formal statement of the charges against him and a formal hearing. Laskar requested both.

On October 6, 2010, Georgia Tech sent Laskar a statement of the five charges against him. Five months thereafter, Laskar's termination hearing commenced before a four-person Faculty Hearing Committee. The parties were

4

given five hours each to present their cases, including opening statements, direct examination of witnesses, cross examination of witnesses, introduction of written evidence, and closing arguments.  Laskar was represented by counsel throughout the hearing.  In the end, the parties presented roughly twelve hours of testimony and argument.

At the close of the hearing, the Committee reviewed the record of the proceedings and deliberated for approximately eight hours.  As required by both the Georgia Tech Faculty Handbook and the Board of Regents Policy Manual, the Committee then set forth its findings and recommendation in a final report. According to the final report, the Committee found the evidence established three out of the five charges against Laskar and unanimously recommended that Peterson dismiss Laskar from his tenured position.  The Committee's report and a copy of the record of the hearing were provided to Peterson, who did not attend the proceedings.

On May 14, 2011, Peterson wrote a letter to Laskar informing him that Peterson had received a copy of the Committee's final report, that a copy of the report was attached to the letter, and that, having "carefully review[ed]" the Committee's report and recommendation as well as the record of the hearing,

5

Peterson agreed with the Committee's recommendation.[3] The letter further stated that Laskar's tenure was revoked and his employment terminated, "effective immediately."

In accordance with the Georgia Tech Faculty Handbook and the Board of Regents Policy Manual, Laskar timely appealed Peterson's decision to the Board of Regents. In a letter dated June 3, 2011, Laskar detailed the grounds for his appeal. Approximately two months later, the Vice Chancellor of Legal Affairs for the Board of Regents informed Laskar that his appeal had been presented to the Board of Regents during a two-day meeting and that the Board had decided to uphold Peterson's decision. Laskar was not invited to attend the meeting at which the Board of Regents considered his administrative appeal.

---

[3] At oral argument, Laskar fervently argued that this Court cannot consider Peterson's letter—and by extension, the assertions therein (i.e., that Peterson "carefully review[ed]" the Committee's report "as well as the record of the hearing")—because the letter was not part of the record before the district court on Appellees' motion to dismiss and is not part of the record on appeal. Indeed, Peterson's letter was not attached to Laskar's complaint or Appellees' motion to dismiss. However, in his petition to the Georgia Superior Court, Laskar quoted, in full, Peterson's statements regarding Peterson's review of the Committee's report and the record of the hearing. *See infra* Part I.B. Laskar's state court petition was properly attached as an exhibit to Appellees' motion to dismiss, and the petition is properly part of the record on appeal. *See Venture Assocs. Corp. v. Zenith Data Sys. Corp.*, 987 F.2d 429, 431 (7th Cir. 1993) ("Documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim."); *see also Univ. Express, Inc. v. U.S. S.E.C.,* 177 F. App'x 52, 53 (11th Cir. 2006) (per curiam) (noting, in considering a motion to dismiss, public records are among the permissible facts a district court may consider); Fed. R. Evid. 201(b)(2). While Peterson's letter itself is not part of the record before us, Peterson's assertions therein, as set forth in Laskar's state court petition, are properly before this Court.

**B.**

On September 9, 2011, Laskar filed a petition for a writ of certiorari or, in the alternative, a writ of mandamus with the Superior Court of Fulton County, Georgia, seeking review of the Board of Regents' decision.  Upon the defendants' motion, the Superior Court dismissed the petition, finding that it lacked jurisdiction to review the termination process.

Laskar appealed the Superior Court's order dismissing his petition to the Georgia Court of Appeals.  On review, the Court of Appeals affirmed the Superior Court's dismissal.  In so doing, the Court of Appeals found that the trial court properly held that it lacked jurisdiction to review the Board of Regents' decision because the termination proceedings were administrative rather than quasi-judicial in nature.  The Court of Appeals noted, however, that Laskar was not without judicial recourse with regard to his dismissal, saying that Laskar "could have raised his due process claims in a direct action against the Board."

**C.**

On May 10, 2013, Laskar filed the instant action pursuant to 42 U.S.C. § 1983, in which Laskar argues that the procedure that preceded his termination did not satisfy the requirements of the Due Process Clause of the Fourteenth Amendment.  In response to Laskar's complaint, Appellees filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) on multiple grounds.

7

First, Appellees argued the district court was without jurisdiction to consider Laskar's § 1983 claim because it was barred by the doctrine of res judicata and the so-called *McKinney* Rule.[4]  Second, Appellees averred Laskar had received all the procedural due process to which he was entitled prior to his termination and, as such, failed to state a claim for relief under § 1983.  Third and finally, Appellees advanced an argument for qualified immunity.

The district court disagreed that Laskar's procedural due process claim was barred by the doctrine of res judicata or was otherwise not actionable; instead, the district court dismissed Laskar's complaint on the grounds that Laskar had failed to state a plausible claim for relief with respect to his procedural due process claim. This appeal followed.

## II.  Discussion

Laskar appeals the district court's grant of Appellees' motion to dismiss pursuant to Rule 12(b)(6).  In dismissing Laskar's complaint, the district court concluded that Laskar had failed to state a plausible claim for relief with respect to his procedural due process claim.  The district court reasoned that Laskar was afforded all the due process to which he was entitled under the Fourteenth

---

[4] *See McKinney v. Pate*, 20 F.3d 1550, 1556–57 (11th Cir. 1994) (en banc) ("[O]nly when the state refuses to provide a process sufficient to remedy the procedural deprivation does a constitutional violation actionable under section 1983 arise.").

8

Amendment, including notice of the charges against him and a hearing before the Faculty Hearing Committee.

On appeal, Laskar avers that, by providing him a hearing before a Faculty Hearing Committee, rather than directly before Peterson, Laskar was not afforded a "meaningful opportunity to be heard." Laskar places considerable emphasis on the absence of any written requirement in the Georgia Tech Faculty Handbook or the Board of Regents Policy Manual mandating that the President attend pre-termination proceedings and/or that he review and rely on the record created by such proceedings. Absent any such requirement, Laskar contends that his hearing before the Committee was "devoid of meaning." As a final point, Laskar argues that, because his hearing before the Committee failed to comply with due process, he was entitled to a post-deprivation hearing before the Board of Regents.

Appellees also take issue with the district court's ruling. While they agree with the district court's conclusion that Laskar was provided due process and its dismissal of Laskar's complaint, Appellees contend that the district court lacked jurisdiction to consider Laskar's procedural due process claim in the first instance because Laskar's complaint was barred by both the doctrine of res judicata and the *McKinney* Rule. As insurance, Appellees reiterate their entitlement to qualified immunity.

9

**A.**

We review de novo a district court's grant of a motion to dismiss pursuant to Rule 12(b)(6) for failure to state a claim for relief, "accepting the allegations in the complaint as true and construing them in the light most favorable to the plaintiff." *Hill v. White*, 321 F.3d 1334, 1335 (11th Cir. 2003) (per curiam). A district court's determination as to subject matter jurisdiction is a legal question, which we review de novo. *See MacGinnitie v. Hobbs Grp., LLC*, 420 F.3d 1234, 1239 (11th Cir. 2005). Guided by these standards, we address the parties' arguments in turn.

**B.**

The central issue before us is whether Laskar was afforded adequate procedural due process prior to revocation of his tenure and termination of his employment with Georgia Tech. In reviewing a decision of a public institution to discharge such an employee, this Court applies a two-tier level of inquiry: "[1] whether the procedures followed by school authorities comported with due process requirements, and if so, [2] whether the action taken is supported by substantial evidence." *Martin v. Guillot*, 875 F.2d 839, 844 (11th Cir. 1989). Here, Laskar does not allege that the Committee's findings were not supported by substantial evidence. As such, we are concerned only with the first inquiry—that is, whether the procedures followed by Georgia Tech comported with procedural due process requirements.

10

Tenured college professors and college professors terminated mid-contract have interests in their continued employment that are safeguarded by due process. *See Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 576–77, 92 S. Ct. 2701, 2709 (1972).  Where a professor to be terminated for cause opposes his termination, due process requires that the professor be given "(1) notice of the reasons for dismissal; (2) notice of the names of adverse witnesses and the nature of their testimony; (3) a meaningful opportunity to be heard; and (4) the right to be heard by a tribunal which possesses some academic expertise and an apparent impartiality toward the charges leveled against the teacher." *Holley*, 755 F.2d at 1497 (setting forth guidelines for minimum procedural due process).  The "essential requirements of due process" are notice and a pre-termination opportunity to respond.  *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 1495 (1985).  While some pre-termination hearing is necessary, it need not be elaborate.  *See id.* at 545, 105 S. Ct. at 1495 ("'something less' than a full evidentiary hearing is sufficient prior to adverse administrative action" (citation omitted)).

Pursuant to the Georgia Tech Faculty Handbook and the Board of Regents Policy Manual, Laskar was entitled to—and received—an opportunity to present reasons, in person, why his employment should not be terminated.  *See Loudermill*, 470 U.S. at 546, 105 S. Ct. at 1495 (mandating an "opportunity to present reasons,

11

either in person or in writing, why proposed action should not be taken"). Upon

his request, Laskar received prior written notice of the charges against him. He

was then provided a hearing before a panel of four faculty members, during which

he was represented by counsel, where he presented evidence in his favor and cross-

examined witnesses against him. Laskar does not allege that the panel lacked

academic expertise or that it was at all biased against him, or that he was prevented

from presenting his arguments against termination.

After some twelve hours of testimony and argument, the Committee

deliberated for approximately eight hours. The Committee found that three out of

the five charges were proven, and it recommended to Peterson that he dismiss

Laskar from his tenured faculty position. Peterson reviewed the Committee's final

report and the record of the hearing, and, concurring in the Committee's

determination, informed Laskar, in writing, that his employment was terminated

effective immediately. Laskar then appealed Peterson's decision to the Board of

Regents. He detailed his arguments on appeal in a written letter submitted to the

Board. *See id.* (noting that opportunity to be heard may be in person or in writing).

Upon review, the Board of Regents affirmed Laskar's dismissal.

Despite extensive pre-termination procedures, Laskar contends that he did

not have a *meaningful* opportunity to be heard because his hearing was not

conducted by or before Peterson, and Laskar was not present when the Board of

12

Regents affirmed his termination.  Laskar also takes issue with the absence of a written requirement that Peterson review or rely on the findings of the faculty hearing committee or the evidence presented at the hearing.  According to Laskar, because the pre-termination procedures at issue do not *explicitly* require Peterson to attend the hearing or to review and rely on the record of the hearing, and because Laskar was not provided with an opportunity to meet with Peterson in person, Laskar was not afforded a meaningful opportunity to be heard.[5]

In support of his argument, Laskar relies extensively on *Loudermill*, which Laskar contends requires that, in order for a hearing to be "meaningful," it must be held before "a decision-maker."  Laskar places great emphasis on the Supreme Court's use of the phrase "to invoke the discretion of the decisionmaker."  *See Loudermill*, 470 U.S. at 543, 105 S. Ct. at 1494.  He interprets the quoted language to mean that he was entitled to a face-to-face meeting with Peterson and/or the Board of Regents to "influence their decisions."  Unabridged, the quote reads:

> Even where the facts are clear, the appropriateness or necessity
> of the discharge may not be; in such cases, the only meaningful
> opportunity to invoke the discretion of the decisionmaker is
> likely to be before the termination takes effect.

---

[5] To clarify, Laskar argues that absent any written requirement that he do so, Peterson was free to disregard the Committee's report and recommendation, rendering the formal hearing before the Committee "devoid of meaning."  Laskar has not provided any authority for the proposition that a written requirement that Peterson review or rely on the Committee's report somehow guarantees procedural due process or that a lack thereof renders meaningless the notice and opportunity afforded to Laskar here.  In any event, Peterson stated that he reviewed the Committee's report and the record of the hearing before making his determination.  *See supra* note 3.

*Id.* Thus, in context, the Supreme Court was simply stating that the time to be heard is prior to the adverse employment action. *See id.* Laskar was indisputably afforded a pre-termination opportunity to be heard by *a* decisionmaker when he appeared before the Faculty Hearing Committee, who then provided Peterson with its report and recommendation as well as a copy of the hearing record.

Indeed, we do not find that any of the cases cited by Laskar provide that, as a matter of law, a pre-termination hearing must be held before the "ultimate decision-maker" in order to satisfy procedural due process. Rather, in those cases relied upon by Laskar, the reviewing courts suggested procedures warranted by the factual circumstances of the case or, where particular procedures were in place, determined whether those procedures as implemented provided due process. But, "not all situations calling for procedural safeguards call for the same kind of procedure." *Morrissey v. Brewer*, 408 U.S. 471, 481, 92 S. Ct. 2593, 2600 (1972). That there exists case law within this Circuit and in other circuits where a pre-termination hearing was held before a final decisionmaker does not require the conclusion that the procedures applied here failed to comport with due process.[6]

---

[6] The cases cited by Laskar do not call for a conclusion contrary to that reached by the district court. *See Mard v. Town of Amherst*, 350 F.3d 184, 192–93 (1st Cir. 2003) (finding, where decision turns on evaluation of medical evidence, town employee's due process rights not violated by first providing independent medical examination rather than more formal administrative hearing, when followed by adequate post-termination procedures); *Tex. Faculty Ass'n v. Univ. of Tex. at Dallas*, 946 F.2d 379, 388 (5th Cir. 1991) (suggesting public university could employ procedure that might include a hearing before "ultimate decision maker" where faculty member to be terminated first makes colorable showing that he deserves to be retained,

14

*See id.* ("It has been said so often by [the Supreme] Court and others as not to require citation of authority that due process is flexible and calls for such procedural protections as the particular situation demands.").

The pre-termination procedures afforded Laskar satisfied the established guidelines for minimum procedural due process. *See Holley*, 755 F.2d at 1497. Laskar received prior, written notice of the charges against him; he was represented by counsel at a formal hearing before an unbiased faculty committee; he presented argument and evidence on his own behalf, including cross-examination of witnesses against him; he had a right to appeal his termination to the Board of Regents; and he submitted a written appeal to the Board of Regents. In sum, Laskar was provided with the essential requirements of due process: notice of the charges against him and a pre-termination opportunity to respond in person thereto. *See Loudermill*, 470 U.S. at 545–46, 105 S. Ct. at 1495. Neither *Holley* nor *Loudermill* nor the cases cited by Laskar mandate that Laskar should have *also* received a hearing before Peterson or an in-person meeting with the Board of Regents prior to his termination.

---

but absent such showing, a brief written statement from the decision maker as to why faculty member should not be retained would do); *Carter v. W. Reserve Psychiatric Habilitation Ctr.*, 767 F.2d 270, 273–74 (6th Cir. 1985) (per curiam) (stating a meaningful hearing requires, at a minimum, employee be permitted to attend hearing, have assistance of counsel, produce evidence on his own behalf, and challenge the evidence against him).

We agree with the district court that the pre-termination procedures employed by Appellees, including Laskar's hearing before the Faculty Hearing Committee, comported with procedural due process. Accordingly, the district court did not err in granting Appellees' motion to dismiss on the grounds that Laskar could not state a plausible claim for relief under § 1983.

## C.

Appellees reiterate two ancillary arguments on appeal. Specifically, Appellees contend that the district court lacked subject matter jurisdiction to consider Laskar's due process claim in the first instance and, in any event, Appellees are entitled to qualified immunity—all of which Laskar disputes. Because we find that the district court properly dismissed Laskar's complaint, we need not address the issue of qualified immunity. However, Appellees' argument as to the district court's jurisdiction warrants brief examination.

Appellees argue that the district court erred in concluding that it had jurisdiction to consider Laskar's procedural due process claim because (1) Laskar's claim was barred by the doctrine of res judicata, and (2) Laskar failed to avail himself of adequate state procedures to remedy the alleged constitutional violation prior to bringing his § 1983 claim. Each of Appellees' contentions fails.

First, as the district court correctly determined, Laskar's federal action under § 1983 was not barred by the doctrine of res judicata. In determining whether an

16

action is barred by res judicata, a federal court applies the law of the state in which it sits. *Starship Enters. of Atlanta, Inc. v. Coweta Cnty.*, 708 F.3d 1243, 1252–53 (11th Cir. 2013). As this case arose in Georgia, we apply Georgia law, under which "[t]hree prerequisites must be met before res judicata will apply: (1) identity of the cause of action; (2) identity of the parties and their privies; and (3) previous adjudication on the merits by a court of competent jurisdiction." *Id.* at 1254–55 (internal quotation marks omitted).

Here, both the Georgia Superior Court and the Georgia Court of Appeals dismissed Laskar's petition for want of subject matter jurisdiction. A judgment dismissing an action for want of jurisdiction generally "does not preclude a subsequent action in a court of competent jurisdiction on the merits of the cause of action originally involved." *Sewell v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 94 F.3d 1514, 1518 (11th Cir. 1996) (internal quotation marks omitted). As such, the prior state court action was without preclusive effect. *See Am. Nat'l Bank of Jacksonville v. Fed. Deposit Ins. Corp.*, 710 F.2d 1528, 1535–1536 (11th Cir. 1938) (concluding that prior dismissal for lack of subject matter jurisdiction may not apply to bar claims that were or should have been raised in prior action); *see also Setlock v. Setlock*, 688 S.E.2d 346, 348 (Ga. 2010).

Moreover, the requisite identity is missing between the prior and present causes of action because Laskar's § 1983 claim was, in fact, dependent on the

17

outcome of the preceding state court litigation. *See Starship Enters.*, 708 F.3d at 1253 (stating causes of action in prior and current proceedings must be identical for res judicata to apply). Procedural due process violations are not complete "unless and until the [s]tate fails to provide due process." *McKinney*, 20 F.3d at 1557 (internal quotation marks omitted) (quoting *Zinermon v. Burch*, 494 U.S. 113, 123, 110 S. Ct. 975, 983 (1990)). Accordingly, Laskar's federal due process claim did not exist until after Georgia's state courts dismissed his petition. *See id.* at 1557; *see also Cotton v. Jackson*, 216 F.3d 1328, 1331–32 (11th Cir. 2000) (per curiam).

Second, the district court did not err in concluding that Laskar's procedural due process claim was actionable under § 1983. As briefly noted above, a procedural due process violation is not complete "unless and until the state fails to remedy that inadequacy." *McKinney*, 20 F.3d at 1560; *see also Cotton*, 216 F.3d at 1331–32. In other words, even if a plaintiff suffered a procedural deprivation at his administrative hearing, there is no procedural due process violation if the state makes available a means to remedy the deprivation. *See McKinney*, 20 F.3d at 1563. For our purposes, Georgia provides two such state remedies: a writ of certiorari and a writ of mandamus. *See Cotton*, 216 F.3d at 1332–33.

It is evident that Laskar filed a petition for a writ of certiorari or, in the alternative, a writ of mandamus with the Superior Court. However, it is unclear

18

from the Superior Court's dismissal of the petition whether that court's jurisdictional determination was meant to apply only to Laskar's request for a writ of certiorari, or whether it also applied to his alternative request for a writ of mandamus.[7] It is equally unclear whether Laskar pursued his mandamus request on appeal before the Georgia Court of Appeals. Under these circumstances, the district court reached the plausible conclusion that the state courts may have summarily dismissed Laskar's mandamus request without considering the merits thereof—effectively refusing to make available to Laskar a means to remedy the constitutional error alleged. *See McKinney*, 20 F.3d at 1557 ("[W]hen the state refuses to provide a process sufficient to remedy the procedural deprivation . . . a constitutional violation [is] actionable under section 1983 . . . .").

Accordingly, the district court did not err in refusing to dismiss Laskar's § 1983 claim on jurisdictional grounds.

### III. Conclusion

---

[7] "Under Georgia law, certiorari only lies to correct the errors committed 'by any inferior judicatory or any person exercising judicial powers.'" *Cotton*, 216 F.3d at 1332 (quoting O.C.G.A. § 5-4-1(a)). In other words, a writ of certiorari will not issue unless the underlying proceedings are judicial or quasi-judicial in nature. *See id.* A writ of mandamus, on the other hand, may issue "*from any cause* . . . to compel a due performance if there is no other specific legal remedy for the legal rights" claimed. O.C.G.A. § 9-6-20 (emphasis added). Accordingly, while a writ of certiorari was not available to Laskar upon the Superior Court's determination that his termination proceedings were purely administrative, he was still entitled to seek a writ of mandamus. *See, e.g.*, *Cotton*, 216 F.3d at 1332 (finding, although termination proceedings at issue were not judicial or quasi-judicial, plaintiff could have sought a writ of mandamus).

For the foregoing reasons, the district court's dismissal of Appellant's complaint pursuant to Rule 12(b)(6) is AFFIRMED.